923 F.2d 1293
 32 Fed. R. Evid. Serv. 538
 UNITED STATES of America, Appellee,
v.
Gary James LENFESTY, a/k/a Gary James Leufesty, Appellant.
UNITED STATES of America, Appellee,
v.
Robert Richard REDINGER, Appellant.
UNITED STATES of America, Appellee,
v.
Dennis Craig SMITH, Appellant.
UNITED STATES of America, Appellee,
v.
Twila Sue SMITH, Appellant.
UNITED STATES of America, Appellee,
v.
Larry Dean BAKKE, a/k/a "LOCO," Appellant.
 Nos. 90-5132MN to 90-5135MN and 90-5169MN.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1990.
Decided Jan. 9, 1991.
 
 Robert G. Malone, St. Paul, Minn., for appellant Gary James Lenfesty.
 Scott E. Tilsen, Minneapolis, Minn., for appellant Robert Richard Redinger.
 Paul Engh, Minneapolis, Minn., for appellant Dennis Craig Smith.
 Douglas A. Myren, Minneapolis, Minn., for appellant Larry Dean Bakke.
 Bruce H. Hanley, Minneapolis, Minn., for appellant Twila Sue Smith.
 James E. Lackner, Minneapolis, Minn., for appellee U.S.
 Before ARNOLD and MAGILL, Circuit Judges, and BATTEY,* District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 In these appeals five individuals, members of a methamphetamine distribution conspiracy, challenge their convictions and sentences. They allege constitutional and evidentiary errors at trial, as well as mistakes in the computation of their sentences. Because their contentions either lack merit, or (if well-founded) were incidental and harmless errors, we affirm.
 
 I.
 
 2
 In the fall of 1988 and the spring of 1989, Agent Paul Stevens of the Minnesota Bureau of Criminal Apprehension investigated a methamphetamine distribution ring centered in Rochester, Minnesota. His goal was to work his way up the distribution chain, snaring as many participants from as many levels as possible. Over a six-month period, Agent Stevens purchased "crank," that is, methamphetamine, nine times. He made those purchases from three related dealers: Robert Redinger, Dennis Smith, and Twila Smith. The Smiths are brother and sister; Twila Smith lives with Redinger. In each of the nine buys, Stevens approached one of these three people, who in turn contacted their supplier: Gary Lenfesty. On the occasions Dennis Smith participated in the transactions, he went through Redinger, who then called Lenfesty to complete the sale. During the other seven drug buys, either Twila Smith or Redinger contacted Lenfesty directly after a request from Agent Stevens.
 
 
 3
 Though the three dealers and Agent Stevens all lived in Rochester, Minnesota, the actual sales took place in Stewartville, Minnesota. Lenfesty, the wholesaler, lived there in the bottom of a two-story house that had been converted to a duplex. Larry Bakke, Lenfesty's supposed partner, lived upstairs. Whichever of the dealers happened to be a part of a given transaction would, after touching base with Lenfesty, drive with Agent Stevens to Stewartville. On every occasion but one Stevens was dropped off at a gas station near the house in which Lenfesty and Bakke lived. The dealer--either Twila Smith or Redinger--then went to Lenfesty's, bought the crank, picked up Stevens, and consummated the deal on the return trip. During the first transaction, while Redinger made the initial buy, Agent Stevens waited in the car in front of Lenfesty's house. Lenfesty's rightly placed suspicions led to the later drop-off strategy, but came too late to prevent surveillance of his home during those transactions.
 
 
 4
 The cast of characters shifted between sales. Agent Stevens initially contacted Redinger, who participated in the first five of the nine sales before checking into a drug-treatment program. Dennis Smith played a part in two of those sales. Both times, after locating Redinger for Agent Stevens, he accompanied them to Stewartville, waited with Stevens at the gas station, and received a share of the methamphetamine after returning to Rochester for his role in the deal. Twila Smith became the link to the supplier when Redinger was no longer available. She made the calls to Lenfesty, and traveled with Stevens to get the drugs from him in Stewartville. None of the purchases directly involved Larry Bakke. He was linked to the conspiracy in two ways: through the statements of Redinger and Twila Smith characterizing him as Lenfesty's partner and supplier, and through the evidence obtained when his and Lenfesty's house was searched.
 
 
 5
 Agent Stevens's investigation ultimately failed to move any further up the distribution ladder. Try as he might, he never succeeded in persuading one of the dealers to introduce him to their supplier, much less to any drug operative above Lenfesty. When that goal no longer seemed attainable, Stevens closed the net. After the last transaction Twila Smith and Lenfesty were arrested, and search warrants were executed at the Lenfesty-Bakke home. Tools of the drug trade--baggies, contraband, scales, lots of cash--were located in both parts of the duplex. Dennis Smith and Redinger were located soon after. Indictments followed.[1] Redinger pleaded guilty, cooperated with the government, and testified against his co-defendants. The other four people were tried together, though they all sought separate trials.[2] A jury convicted all of them on each count charged. These appeals by each of the five individuals--Bakke, Lenfesty, Twila Smith, Dennis Smith, and Redinger--followed.
 
 II.
 
 6
 Each appellant questions the proceedings below in several respects. The alleged error with the most proponents involves the admission of statements made by Twila Smith that are supposedly unreliable. Twila Smith didn't testify. Her statements came into evidence in two ways: through Agent Stevens's testimony about his contacts with her and the other conspirators, and through several tape-recorded conversations between her and Agent Stevens. Stevens testified that Smith said Lenfesty and Bakke were partners, that they didn't sell to each other's customers, that they tried to limit their group of customers to avoid discovery, that she had been doing business with Lenfesty for a long time, and that she knew all about this methamphetamine organization. Most of this information was also in the recorded conversations. The parties come at these statements in two ways. Lenfesty argues that the trial court must find that co-conspirator's statements are reliable before admitting them into evidence. Some of Smith's weren't, he continues, because she lacked personal knowledge of his relationship with Bakke or the methamphetamine organization. In addition to the dispute over admissibility, Lenfesty and Bakke also sought wider latitude than the District Court accorded them for impeachment of Smith's statements. Twila Smith had prior felony convictions. They argue that it was error to prevent the jury from considering those convictions in evaluating her credibility.
 
 
 7
 At oral argument, Lenfesty refined his first contention. The issue here, he now agrees, is not the reliability of co-conspirator statements in general. That is settled by Rule 801(d)(2)(E) of the Federal Rules of Evidence which, if a court finds that a conspiracy exists and that a given statement was made in furtherance of the conspiracy, allows that statement to be admitted. Rather, Lenfesty is troubled by alleged hearsay statements within Twila Smith's comments. Neither Rule 801(d)(2)(E) nor Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), which the District Court relied upon, sanctions hearsay within admissible co-conspirator's statements without a further finding of reliability. The rule is not an open door of admissibility. Just as a co-conspirator's statement is excluded from the category of hearsay, any hearsay within a co-conspirator's statement must also fall within some exception to the rules against admitting hearsay in order to serve as evidence. This proposition is embodied in Rule 805's treatment of hearsay within hearsay.
 
 
 8
 Did the District Court err, then, by admitting some of Smith's statements--through Agent Stevens's testimony and the co-conspirator exception--that contained another layer of hearsay? We do not believe so. Smith's own observations support most of her statements. She, of course, knew her own history of drug deals with both Lenfesty and Bakke. From those transactions flows her awareness of how they tried to keep their customers separate. Her dealings with Lenfesty on Agent Stevens's behalf bear out Lenfesty's reluctance to widen his circle of known customers. Smith's dealings and observations also support, to a large extent, her statements that Lenfesty and Bakke were partners. Their partnership is also illustrated by the many connections Smith made between Lenfesty's supply of drugs and Bakke's travels and efforts when Agent Stevens sought to buy methamphetamine. In sum, there is no discernible hearsay within Twila Smith's statements. Nor is it fatal to her testimony, if, in fact, any of her comments to Agent Stevens was based on the statements of Lenfesty or Bakke rather than on her own independent knowledge. That potential additional layer of hearsay would also be excusable as the statements of other co-conspirators. Lenfesty's contention here, cast in terms of reliability, but actually concerning alleged hearsay within a co-conspirator's statements, is thus not supported by the record.
 
 
 9
 The parties' assertions about an insufficient opportunity for impeachment of Smith's statements once they were admitted are similarly misplaced. Some impeachment, based on Twila Smith's reputation for truthfulness, was allowed. The District Court, however, did not allow the introduction of any of her numerous prior felony convictions. Lenfesty and Bakke urge that this ruling was unnecessarily grudging. They point to Bourjaily's dictum suggesting the introduction of prior felony convictions as a proper method of impeachment. Bourjaily, 483 U.S. at 180, 107 S.Ct. at 2781. There is a tug-of-war here. Enough impeachment of a non-testifying co-defendant (Twila Smith) must be allowed to protect the other co-defendants' (Lenfesty and Bakke) confrontation rights. But the non-testifying co-defendant's right to be fairly tried for this crime (and not convicted for her prior bad acts) must also be safeguarded. We put our faith in the sound discretion of the District Court in striking this difficult balance. Our conclusion is supported by the decisions of our sister circuits. District court decisions both allowing impeachment with prior-crimes evidence, and refusing to allow it, have been upheld on appeal. Cf. United States v. Bovain, 708 F.2d 606, 613-14 (11th Cir.), cert. denied, 464 U.S. 898, 104 S.Ct. 251, 78 L.Ed.2d 238 (1983) (upholding admission), with United States v. Robinson, 783 F.2d 64, 67-68 (7th Cir.1986) (upholding exclusion). We hold that the District Court did not abuse its discretion in excluding Twila Smith's prior convictions.
 
 
 10
 The next contention we address, the admissibility of Lenfesty's confession, is a potentially winning point--were it not for all the other evidence showing that he is guilty beyond a reasonable doubt. Lenfesty confessed to being a part of the conspiracy and to possessing methamphetamine. The magistrate rejected his motion to suppress the confession, and Lenfesty argues that he erred in doing so. There is testimony in the record that Lenfesty asked to see his lawyer--not once, but several times--before making that confession. If those requests were made, then Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), prevents the District Court from admitting that confession into evidence. The record also contains testimony that Lenfesty's remarks to the police were more in the nature of comments that he had a lawyer, rather than direct requests to see his lawyer. The magistrate did not resolve this conflict; instead, he held that the officer Lenfesty confessed to did not know about the earlier "requests" and therefore was not bound by them. The magistrate concluded that Lenfesty's waiver of his rights--after the police re-initiated questioning--was thus valid. That is not the law. Knowledge of a suspect's request for counsel made to one officer is imputed to all the other police officers involved in the case. Arizona v. Roberson, 486 U.S. 675, 687-88, 108 S.Ct. 2093, 2101-02, 100 L.Ed.2d 704 (1988). Moreover, as the Supreme Court again made clear recently in Minnick v. Mississippi, --- U.S. ----, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), Edwards invalidates police-prompted waivers obtained after a suspect requests counsel.
 
 
 11
 We are left, then, with the magistrate's error of law and conflicting evidence of the nature of Lenfesty's comments to the police. He urges a remand for further fact finding. The government contends that the error was harmless beyond a reasonable doubt. We agree with the government. Even setting aside Lenfesty's confession, which is the best he could hope for from the remand, the evidence of his guilt is overwhelming. All three dealers told Agent Stevens on numerous occasions that Lenfesty was their source. They called him in Stevens's presence to fill Stevens's requests for drugs. During each of these transactions, the dealers were seen entering Lenfesty's house empty handed and leaving it with methamphetamine. After the last sale, Lenfesty was arrested as he left his home. The subsequent search of that house, guided by Lenfesty, revealed all the tools of the drug trade. He even directed the police to his stash of money, which included several thousand dollars in marked buy money. A remand on this point is unnecessary. Lenfesty's confession merely repeated the only conclusion a reasonable jury could reach based on all the other evidence: he was guilty of possessing and distributing methamphetamine.
 
 
 12
 The next alleged error we consider is the District Court's denial of the appellants' motions for severance. All the appellants who were tried were tried together. They all sought separate trials, and now contend the District Court erred in denying their motions. Whether to sever the trials of co-defendants is within the District Court's discretion. That discretion must be guided, however, by the likelihood that, if separate trials were held, one or more co-defendants would testify and in their testimony exculpate the defendant seeking the severance. United States v. Wagner, 884 F.2d 1090, 1100 (8th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).
 
 
 13
 Twila and Dennis Smith's allegations here do not withstand even a cursory evaluation. We decline to address them, other than to note that they are not supported by the record. Appellant Bakke, however, comes a bit closer. Bakke offered the affidavits of Lenfesty and the Smiths to the District Court. In those documents they promised to testify in his behalf, and exculpate him on the conspiracy charge, if Bakke was tried separately and if he was tried after them. Bakke's argument for a new separate trial is snagged by this second condition. This condition of timing, which the government has no obligation to enforce, renders Bakke's co-defendants' affidavits too indefinite to justify granting him a separate trial. Though counsel attempted to explain it away as a drafting oversight, we are not convinced. The District Court did not abuse its discretion in denying all the motions for severance, including Bakke's.
 
 
 14
 Appellant Dennis Smith alleges three other trial errors that need to be addressed. He challenges two aspects of Agent Stevens's testimony. Stevens testified about a conversation with Smith (at one of the sales) during which Smith threatened to kill Stevens if he felt that Stevens was a policeman. On appeal, citing Federal Rule of Evidence 404(b), Smith argues that this other-acts testimony should not have been admitted because it inflamed and prejudiced his jury. Smith is wrong. This aspect of Stevens's testimony was properly admitted because Smith's threats were part of this conspiracy rather than other acts or crimes. United States v. Tate, 821 F.2d 1328, 1331-32 (8th Cir.1987), cert. denied, 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988). Smith also contends Agent Stevens improperly interpreted some of the evidence. Agent Stevens, it is clear, was the government's key witness. His testimony spans over four hundred pages of the trial transcript. During that testimony he often explained the terms and procedures of these transactions. He testified, on the basis of his experience as an investigator, that several aspects of these deals tracked the general way of operating drug conspiracies. Agent Stevens also testified, and this is where Smith sees the greatest error, to Smith's more than minimal role in the transactions. Smith contends Agent Stevens's interpretations of his acts invaded the jury's field: deciding whether Smith was a part of the conspiracy.
 
 
 15
 Smith's argument about improper witness interpretation of the evidence cannot overcome several obstacles. He failed at trial to challenge three of the instances he now assigns as error. Moreover, even assuming errors did occur, they were harmless. As was the case with appellant Lenfesty, the evidence of Dennis Smith's guilt was overwhelming. Smith was not, as he contends, merely present at these sales. The evidence shows he helped guide Agent Stevens to the drugs. And he shared in the contraband in exchange for his efforts. This conclusion also disposes of the appellant's contention that his conviction is not supported by the evidence. Smith's remaining point similarly lacks any merit. As he was being fingerprinted, Smith volunteered to Agent Stevens that he was going to beat these charges because he was only minimally involved in one sale. Agent Stevens corrected Smith, noting that he had been present at two of the drug buys. Smith paused, then agreed, and then repeated his prediction that he would be found innocent anyway. Agent Stevens's offhand response, given before Smith had been read his rights, hardly suffices to trigger Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 
 
 16
 Finally, the appellants challenge the sentences they received on various grounds. Redinger pleaded guilty. On the government's motion, the District Court departed downward because of his cooperation and sentenced him to three years and three months in jail. He challenges that sentence, nonetheless, on a quite inventive ground. He says he should have the benefit of any change in the applicable provisions of the Sentencing Guidelines. His sentencing range comes from the interplay of two provisions: U.S.S.G. Sec. 2D1.3(a)(2)(B), which prescribed an offense level for selling drugs near a school, and Sec. 2D1.1 which prescribed an offense level for run-of-the-mill narcotics sales based on the kind of drug one sold, irrespective of where the sale occurred. Prior to November 1, 1989, Sec. 2D1.3(a)(2)(B) required that the base offense level calculated in Sec. 2D1.1, should be doubled for an individual convicted of selling drugs near a school. At this time, methamphetamine was not listed separately in Sec. 2D1.1. Rather, a base offense level for methamphetamine sales had to be generated from the drug-equivalency table. After the appellant's crime, the Sentencing Commission changed both sections. The substance of Sec. 2D1.3(a)(2)(B) was added to Sec. 2D1.2, and amended to require a two-level increase for drug sales close to schools in place of the old doubling requirement. Section 2D1.1 was also changed by adding specific recommendations for methamphetamine sales. Those provisions had the effect of increasing the Sec. 2D1.1 base offense level over the old equivalency-calculation offense level for someone like Redinger who sold methamphetamine near a school.
 
 
 17
 Because the net sentencing range under the Guidelines in effect when Redinger sold crank was less than the net sentencing range of the Guidelines in effect at sentencing, the District Court properly began its calculations with the former, less harsh, range. See Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). The Court then departed downward from that range. On appeal Redinger seeks the benefit of the favorable change in Sec. 2D1.3(a)(2)(B), no more doubling, while maintaining the favorable previous drug-equivalency provision in Sec. 2D1.1. The government contends that Redinger's argument treats the Sentencing Guidelines like a smorgasbord. Perhaps that characterization is a bit uncharitable, but we nonetheless decline to parse the Guidelines so finely. Old Sec. 2D1.3(a)(2)(B) and old Sec. 2D1.1 relate to one another by their own terms, as do the new Sec. 2D1.2 and the new Sec. 2D1.1. The most reasonable interpretation of these provisions is that they move in concert. The District Court correctly began its sentencing calculations for Redinger with the complete set of Guidelines in effect when he sold methamphetamine.
 
 
 18
 The Smiths also attack their sentences. Dennis Smith contends that he was improperly classed as a career offender, because Minnesota considers some of his previous crimes to be misdemeanors instead of felonies. Our recent opinion in United States v. Hester, 917 F.2d 1083 (8th Cir.1990), dooms his contention. How a state views an offense does not determine how the United States Sentencing Guidelines view that offense. Hester, 917 F.2d at 1084-85. Because of the nature of his prior crimes he was properly considered a career offender. Dennis Smith's other challenges to his twenty-two-year sentence are similarly meritless.
 
 
 19
 Twila Smith also contends that her sentence of five years and ten months was improper. Only one of her alleged grounds for reversal deserves discussion. She charges Agent Stevens with "sentencing entrapment." His only motive, she urges, in repeatedly purchasing drugs from her was to increase both the amount of drugs in the conspiracy and her sentence. She styles this objection as a violation of her due-process rights, though she deploys it against her sentence rather than her conviction. We are not prepared to say there is no such animal as "sentencing entrapment." Where outrageous official conduct overcomes the will of an individual predisposed only to dealing in small quantities, this contention might bear fruit. Cf. United States v. Jacobson, 916 F.2d 467, 470 (8th Cir.1990) (en banc). The record reveals, however, another predisposition in Twila Smith: to help Agent Stevens find methamphetamine in whatever quantities he desired. By definition, her protest of entrapment--sentencing or otherwise--fails. Dennis and Twila Smith's sentences are therefore affirmed.
 
 III.
 
 20
 These crimes made for an extended case and a tangled appeal. We commend the District Court for its judicious sorting of these many issues. We likewise thank the appellants' lawyers, whom we appointed, and who have discharged their obligations effectively and professionally.
 
 The judgment of the District Court is
 
 21
 Affirmed.
 
 
 
 *
 The Hon. Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 Each individual was charged with conspiring to distribute methamphetamine, 21 U.S.C. Secs. 841(b)(1)(B), 846, and with actually distributing the drug during the transactions they participated in, 21 U.S.C. Secs. 841(a)(1), (b)(1)(C), 845a(a), 18 U.S.C. Sec. 2(a). Since the Lenfesty-Bakke duplex was within 1000 feet of a public high school, their garden-variety crime of distribution was compounded. Bakke and Lenfesty were also charged with possessing the methamphetamine found in their respective parts of the duplex during the searches, 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(C), 18 U.S.C. Sec. 2(a)
 
 
 [2]
 The case was tried before the Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota