**UNITED STATES of America, Appellee,**

v.

**Joseph Franklin CALVA, Appellant.**

**No. 91–3739.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1992.

Decided Oct. 29, 1992.

---

Samuel A. Perroni, Little Rock, Ark., argued, for appellant.

Terry L. Derden, Little Rock, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Joseph F. Calva appeals his sentence after pleading guilty to distributing cocaine, operating an illegal gambling enterprise, and money laundering. Since we find that Calva's constitutional challenges to the Sentencing Guidelines are precluded by this court's prior holdings, and that his other claims are without merit, we affirm.

## I.

Calva pleaded guilty to a three-count indictment, charging him with: (1) distribution of cocaine, in violation of 21 U.S.C. § 841 (1988); (2) conducting an illegal gambling operation involving five or more persons, in violation of 18 U.S.C. § 1955 (1988);[1] and (3) acceptance of United States currency which was represented to be the proceeds of the sale of a controlled substance, in violation of 18 U.S.C. § 1956(a)(3) (1988). The district court[2] sentenced Calva to thirty-six months imprisonment.[3]

---

1. The gambling charge stemmed from an illegal bingo operation conducted at a club owned and operated by Calva. The gambling charge is not subject to this appeal.

2. The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas.

3. Calva's sentencing level was found to be 24, with a guidelines range of 51 to 63 months. Pursuant to a government motion under U.S.S.G. § 5K1.1 for substantial assistance, the district court reduced its initial sentence by 30%. As an additional part of a plea agreement, the government reserved the right to file a mo-

The indictment charged Calva with a single drug distribution count for selling two ounces of cocaine to an undercover government informant. Nevertheless, the government alleged for sentencing purposes that Calva distributed 34⅛ ounces of cocaine.[4] The government specifically alleged that a witness purchased 24 ounces of cocaine from Calva during a period ending in June of 1990. During that same period and up until January 24, 1991, the government made twelve additional purchases from Calva totalling 10⅛ ounces. During one of these undercover buys, a confidential informant purchased two ounces of cocaine from Calva. At the instruction of the government, the informant told Calva before the sale that the purchase money was the product of the illegal sale of other drugs. This transaction accounted for the cocaine distribution and money-laundering charges in the indictment.

Calva challenges his sentence on several grounds. First, he argues the inclusion of an additional 32⅛ ounces of cocaine—as uncharged relevant conduct—to the amount of drugs named in the indictment violates the Fifth and Sixth Amendments to the Constitution. Second, he argues that the United States Sentencing Commission exceeded its statutory authority in promulgating the uncharged relevant conduct provision in U.S.S.G. § 1B1.3(a)(2). Third, he argues the government violated his due process rights by continuing to make cocaine purchases from him in order to increase his sentence. Finally, he argues that the government committed sentencing entrapment when the informant told Calva that the money the informant used to purchase the cocaine came from an illegal drug transaction.

## A. Constitutionality of § 1B1.3(a)(2)

The United States Sentencing Guidelines provide that in determining the base offense level, the court shall group "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The background note to this section provides, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3(a)(2) background note.

Calva contends the inclusion of uncharged drug quantities in the computation of his sentence violates his constitutional rights to indictment, jury trial, and confrontation under the Fifth and Sixth Amendments to the Constitution. We find that Calva's constitutional claims are controlled by two recent *en banc* decisions of this court.

■ First, in *United States v. Galloway,* 976 F.2d 414, 425 (8th Cir.1992) (en banc), we held that sentencing enhancement based on uncharged relevant conduct that is proven by a preponderance of the evidence does not violate constitutional rights to indictment, jury trial, and proof beyond a reasonable doubt. We based our decision on the Supreme Court's opinion in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which held constitutional a Pennsylvania statute providing for a mandatory minimum sentence of five years imprisonment whenever the sentencing judge finds, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of certain specified offenses. Like the Supreme Court in *McMillan,* we drew a distinction between the rights enjoyed by criminal defendants at the guilt and sentencing phases of their case.

---

tion under Fed.R.Crim.P. 35 to further reduce Calva's sentence.

**4.** Calva does not challenge the factual finding of 34⅛ ounces. While there was a six-month gap between the distribution of the 24 ounces and the later 10⅛ ounces of cocaine, the district court found that the cocaine all involved the

"same course of conduct or common scheme or plan." Specifically, the district court found an overlap in the drug (cocaine), a minor overlap among buyers (the government informant made two small buys prior to the six-month hiatus in his undercover purchases), and an overlap in the location of distribution.

[T]he Sentencing Guidelines do not create separate offenses with separate penalties. The Guidelines operate only at the sentencing stage, after the accused has been afforded the full panoply of constitutional protections and found guilty beyond a reasonable doubt. The Guidelines are a direct reflection of the bifurcated nature of our criminal process, which separates trial and conviction from sentencing.

*Galloway*, 976 F.2d at 424. Because the full panoply of constitutional rights no longer attaches after a defendant has been adjudged guilty, the imposition of sentencing factors based on proof by a preponderance of the evidence does not violate the constitution. *Id.* at 425. *See also United States v. Wise*, 976 F.2d 393, 400 (8th Cir. 1992) (en banc); *United States v. Mobley*, 956 F.2d 450, 455 (3d Cir.1992); *United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir.1991) (en banc), *cert. denied*, — U.S. ——, 112 S.Ct. 1564, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992).

■ Second, Calva's claim that a sentence enhancement for uncharged relevant conduct under U.S.S.G. § 1B1.3(a)(2) violates his right to confront witnesses is controlled by our recent *en banc* decision in *Wise*, 976 F.2d at 400. In *Wise*, we held that the right to confront witnesses does not attach at the sentencing phase. We found that the guidelines did not alter the pre-guidelines sentencing policy that a criminal defendant had no right to confront witnesses at the sentencing phase of his trial. *Id.* Therefore, we conclude that the uncharged relevant conduct provisions of the Sentencing Guidelines do not violate Calva's constitutional rights to indictment, jury trial, and confrontation.

We noted in *Galloway* that sentences imposed based on sentencing factors other than the charged offense may violate due process if the resulting sentence overwhelms or is extremely disproportionate to the punishment that would otherwise be imposed. *Galloway*, 976 F.2d at 426. *See also Wise*, 976 F.2d at 401 (legislature may not impose sentencing factors that become "a tail which wags the dog of the substan-

tive offense") (quoting *McMillan*, 477 U.S. at 87–88, 106 S.Ct. at 2416–17); *Restrepo*, 946 F.2d at 659–60. We found in *Galloway*, however, that a sentence that is nearly tripled after application of U.S.S.G. § 1B1.3(a)(2) is not sufficiently overwhelming to raise due process concerns. *Galloway*, 976 F.2d at 426. In this case, the sentence enhancement received by Calva under U.S.S.G. § 1B1.3(a)(2) does not even double the sentence he would have received had he been sentenced merely on the charged conduct. Clearly, his sentence enhancement has not grown into a tail wagging the dog of his substantive offense. Therefore, his sentence does not violate due process.

### B. Statutory Authority

■ Calva argues that the Sentencing Commission exceeded its statutory authority in promulgating U.S.S.G. § 1B1.3(a)(2). *Galloway* again controls our holding on this issue. After reviewing the statutory history of the sentencing guidelines and related law, we concluded that Congress granted the Sentencing Commission full authority to adopt a relevant conduct guideline. *Galloway*, 976 F.2d at 420. *See also United States v. Ebbole*, 917 F.2d 1495, 1501 (7th Cir.1990).

### C. Government Conduct

■ Calva concedes the defense of entrapment is not available to him because he had shown a predisposition to commit drug sales. Nevertheless, Calva argues his due process rights were violated by the government's continued cocaine purchases. Since the government indicted him on the basis of one two-ounce sale, he claims the remaining 8⅛ ounces that he sold to the government informant resulted from sales instigated by the government merely to increase his sentence and, therefore, constituted sentencing entrapment in violation of his due process rights.

This court has intimated that there may exist a "sentencing entrapment" claim that arises when the government ratchets up a defendant's drug sales or other conduct merely to increase his sentence. *United*

States v. Stuart, 923 F.2d 607, 614 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991); United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). See also United States v. Barth, 788 F.Supp. 1055 (D.Minn.1992).

Calva has presented no evidence, however, that the government continued purchases merely to enhance his eventual sentence. While the Sentencing Guidelines' mechanism of boosting sentences based on the cumulation of additional drug sales has the potential for abuse by police, this is not such a case. Police must be given sufficient leeway to construct cases built on evidence that proves guilt beyond a reasonable doubt. Police also must be given leeway to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy.

The government in this case continued purchases of narcotics from Calva for a reasonable period in order to probe the extent of the distribution ring, identify forfeitable assets, and to snare Calva's supplier. The government succeeded in this endeavor, locating considerable forfeitable assets, snaring Calva's cocaine supplier, and arresting a coconspirator. Therefore, the government's actions clearly did not constitute sentencing entrapment. Moreover, government conduct in this case was not so egregious as to constitute a violation of Calva's due process rights. Lenfesty, 923 F.2d at 1300 ("Where outrageous official conduct overcomes the will of an individual predisposed only to dealing in small quantities, this (sentencing entrapment) contention might bear fruit."); United States v. Russell, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) ("[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.").

**5.** The sting provision of 18 U.S.C. § 1956(a)(3) makes it a crime for a person, with the intent of committing an unlawful activity, to conduct a

### D. Money Laundering

Calva argues a similar entrapment claim regarding the money laundering conviction. He argues the government informant's statement that the money he was using to purchase drugs from Calva came from the illegal sales of drugs constituted sentencing entrapment. Calva argues this count was created by the government merely to enhance his sentence.

Calva's argument is misplaced. The informant's statement to Calva established the elements of the crime itself.[5] Therefore, Calva's agreement to take the money represented by the government agent to be from illegal drug sales was a violation of the law. It was not merely an enhancement of his sentence. Calva's argument of entrapment on this point, therefore, goes to his guilt or innocence, not to his sentence. Since Calva pleaded guilty to the money laundering count, specifically waiving an entrapment defense, he has forfeited the right to make this claim.

### II.

For the foregoing reasons, the judgment of the district court is affirmed.

HEANEY, Senior Circuit Judge, concurring.

Joseph Calva was charged and pleaded guilty to, inter alia, distribution of two ounces of cocaine. His sentence was based on allegations of so-called relevant uncharged conduct—specifically that he had sold an additional 32⅛ ounces of cocaine on other occasions—as appears to be required by the sentencing guidelines. See U.S.S.G. § 1B1.3(a)(2).

I believe that those guidelines not only exceed the statutory authority under which the Sentencing Commission operates, see United States v. Galloway, 976 F.2d 414, 428 (8th Cir.1992) (Beam, J., dissenting), but that they violate the notice provision and due process requirements of the Fifth

financial transaction involving property represented by a law enforcement officer to be the proceeds of an unlawful activity.

Amendment to the United States Constitution and the right to a jury trial under the Sixth Amendment. *See id.* at 436 (Bright, J., dissenting). I also believe that the presentation of hearsay evidence at the sentencing phase violates the defendant's rights under the Confrontation Clause of the Sixth Amendment. *See United States v. Wise,* 976 F.2d 393, 405 (8th Cir.1992) (Richard S. Arnold, C.J., concurring in part and dissenting in part).

Unfortunately, this circuit has held to the contrary in its recent en banc decisions in *Galloway* and *Wise.* I feel compelled to concur in this case under the weight of these en banc decisions, but had I participated in those cases, I would have joined the thoughtful and well-reasoned dissents.