UNITED STATES of America, Appellee,

v.

**Willie S. MAGEE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Gerry McCRARY, also known as G–Man, Appellant.**

UNITED STATES of America, Appellee,

v.

**William FRIENDS, also known as Bill, Willie, Appellant.**

Nos. 93–2622, 93–2752 and 93–2756.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1994.

Decided March 21, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied in No. 93–2682 April 29, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied in No. 93–2756 May 16, 1994.

---

418

Brenda Hamilton, Kansas City, MO, argued, for appellant in 2682.

Bruce Simon, Kansas City, MO, argued for appellant in 2752.

Michael Gunter, Kansas City, MO, argued, for appellant in 2756.

Larry Curtis Pace, Kansas City, MO, argued, for appellant in 2820.

Christina Y. Tabor, Asst. U.S. Atty., Kansas City, MO, for appellee.

Before BEAM and MORRIS S. ARNOLD, Circuit Judges, and WELLFORD,* Senior Circuit Judge.

* The HONORABLE HARRY W. WELLFORD, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

MORRIS S. ARNOLD, Circuit Judge.

Willie Magee, Gerry McCrary, and William Friends were convicted in late 1992 of various drug-related charges, firearms charges, and food stamp violations. Darren Brown pleaded guilty to similar charges at around the same time. All four defendants appeal. Mr. Magee, Mr. McCrary, and Mr. Friends challenge both their convictions and their sentences; Mr. Brown challenges only his sentence. We affirm the trial court in all regards except one; we vacate Mr. McCrary's sentence and remand his case to the trial court for reconsideration with respect to the amount of drugs attributable to Mr. McCrary.

## I.

Mr. Magee was convicted of conspiracy to distribute more than 50 grams of cocaine base; distribution on May 27, 1992, of cocaine base; and use of a firearm on May 27, 1992, in connection with the distribution of cocaine base. He argues on appeal that the evidence was insufficient on all of those counts. He also contends that his waiver of the right to testify was not knowingly and intelligently made and that he was deprived of his sixth amendment right to counsel by his lawyer's ineffectiveness in advising him and in developing the record with respect to his waiver of the right to testify. Finally, he asserts that the trial court erred in failing to grant a four-level reduction, for "minimal" role, in the calculation of his base offense level for sentencing purposes (Mr. Magee did receive a two-level reduction, for "minor" role).

We have read very carefully the transcript of the six-day trial. Testimony incriminating to Mr. Magee was given by Investigator Edward Dawkins and Detective Gary Thurman of the Kansas City, Missouri, police department; by Leroy Lee, an informant; and by Russell Clark, who had previously pleaded guilty to two drug offenses and one firearms offense and was testifying under a plea agreement with the government. That evidence, in our view, is sufficient to sustain Mr. Magee's convictions on all three of the counts in question. *See, e.g., United States v. Jones,* 990 F.2d 1047, 1048 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994).

During the trial but outside the presence of the jury, the trial court held a short hearing with respect to Mr. Magee. In that proceeding, Mr. Magee's lawyer first asked Mr. Magee, "You and I have talked about this case and have talked about the fact that the Constitution gives you the right to choose whether you testify or whether you choose not to testify; do you understand that?" Mr. Magee responded, "Yes." Mr. Magee's lawyer then asked, "You know that the government has the burden of proof and you have no obligation to testify, and that if you do not testify, that that can't be used by the jury in determining your guilt or innocence; do you understand that?" Mr. Magee responded, "Yes." Mr. Magee's lawyer continued, "Have you made a decision as to whether or not it is your desire to testify in this case?" Mr. Magee answered, "No." Following up what seems to us to have been a confusing response, however, Mr. Magee's lawyer asked, "You don't want to testify?" Mr. Magee's reply was an unequivocal, "No, I don't."

Mr. Magee's lawyer went on to say, "You understand that if you did testify, you could be cross-examined about numerous matters, including, possibly, prior criminal convictions? Do you understand that?" Mr. Magee responded, "Yes." Mr. Magee's lawyer continued, "Having been advised of all that, you have chosen on your own to make the decision not to testify, is that correct?" Mr. Magee answered, "Yes." The trial court then explicitly found that Mr. Magee's waiver of his right to testify was "a voluntary decision and an informed decision."

On appeal, Mr. Magee contends that his waiver of the right to testify was not an informed decision. He asserts that he was unaware that he could provide testimony that might be considered exculpatory; he also asserts that he did not know that, under the rules of evidence, he could be cross-examined about only one of his prior convictions, rather than all seven. Finally, he seems to argue that he was prejudiced by the trial court's failure to instruct the jury that his silence

could not be considered. Mr. Magee frames these contentions in terms of both trial court error and a deprivation of his sixth amendment right to counsel, based on his lawyer's alleged ineffective assistance. He buttresses his argument by reference to remarks that he made at sentencing, specifically, the protest that "The reason ... I was convicted ... of conspiracy, ... you know, ... I failed, you know, with me not knowing enough about the law that I had. If I had understood that, when I first come to this trial, I would have took that stand, because I am the only one— it is against me to come up that I have no part in it." Mr. Magee subsequently stated, "I would rather ... schedule the sentence for another time since I can't represent myself in court so that I, you know, had no part in this." (After consultation with his lawyer, Mr. Magee agreed to be sentenced on the day he made his remarks.)

■ We consider Mr. Magee's arguments first from the perspective of trial court error. A defendant's waiver of the right to testify must be made "voluntarily and knowingly." *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir.1987); *see also United States v. Gleason*, 980 F.2d 1183, 1185 (8th Cir.1992). In the hearing, Mr. Magee stated that he and his lawyer had talked about whether he should testify, that he understood that he could be cross-examined by the government if he did testify, and that he had decided not to testify. Under those circumstances, and after reading the transcript of the colloquy between Mr. Magee and his lawyer, we hold that there was no error in the trial court's ruling that Mr. Magee had made a voluntary and informed decision to waive his right to testify. *See, e.g., United States v. Gleason*, 980 F.2d at 1185–86. As for the trial court's failure to instruct the jury with respect to Mr. Magee's silence, nothing in the transcript of the jury instructions conference reflects that Mr. Magee either asked for such an instruction or objected when the trial court indicated a reluctance to give such an instruction. Under those circumstances, Mr. Magee has waived that argument.

■ To the extent that Mr. Magee is contending that he was deprived of his sixth amendment right to counsel, we note that such arguments are not usually cognizable on direct appeal, except in circumstances not present here, but are more appropriately raised in a petition under 28 U.S.C. § 2255, where the relevant facts may be fully developed. *See, e.g., United States v. Kenyon*, 7 F.3d 783, 785 (8th Cir.1993); *United States v. Petty*, 1 F.3d 695, 695–96 (8th Cir.1993); and *United States v. Thomas*, 992 F.2d 201, 204 (8th Cir.1993). *See also United States v. Echols*, 2 F.3d 849, 850 (8th Cir.1993) (*per curiam*). We therefore decline to address that question and express no view on its merits.

Under the federal sentencing guidelines, a trial court may reduce a defendant's base offense level by four levels if the defendant "was a minimal participant" or by two levels if the defendant "was a minor participant." *See* U.S.S.G. § 3B1.2(a), § 3B1.2(b). A "minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." *See* U.S.S.G. § 3B1.2, application note 3. A defendant plays a minimal role if, for example, he lacks "knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *See* U.S.S.G. § 3B1.2, application note 1.

The trial court found that Mr. Magee played a minor role in the drug conspiracy. We have read the transcripts of both the trial and the sentencing hearing. That finding is not clearly erroneous. *See, e.g., United States v. Westerman*, 973 F.2d 1422, 1428 (8th Cir.1992).

## II.

Mr. McCrary was convicted of conspiracy to distribute more than 50 grams of cocaine base; operation of a building for the purpose of unlawful distribution of cocaine base; distribution on June 10 and June 17, 1992, of cocaine base; use of a firearm on June 17, 1992, in connection with the distribution of cocaine base; and unlawful acquisition on June 17, 1992, of food stamps. He argues on appeal that the evidence was insufficient on the firearms charge, that the government improperly vouched for the truthfulness of

various witnesses, and that the trial court improperly rejected jury instructions that would have required the jury to determine the period during which each defendant participated in the drug conspiracy and the amounts of drugs properly attributable and foreseeable to each defendant. He also contends that the trial court erred in failing to grant a two-level reduction, for acceptance of responsibility, in the calculation of his base offense level. Finally, he asserts that the trial court incorrectly calculated his base offense level from the amount of drugs established.

■ We have read thoroughly the transcript of the trial. The most incriminating testimony with respect to the firearms charge against Mr. McCrary was given by Leroy Lee, an informant, and by Russell Clark, who was testifying under a plea agreement with the government after having pleaded guilty to two drug offenses and one firearms offense. The evidence presented by those witnesses, in our view, is sufficient to sustain Mr. McCrary's conviction on the firearms charge. *See, e.g., United States v. Jones,* 990 F.2d 1047, 1048 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994).

■ Mr. McCrary contends that certain remarks made by the government during the trial amounted to impermissible vouching for the truthfulness of two witnesses' testimony (the witnesses were Emerson Harlin and Russell Clark, both of whom testified under a plea agreement with the government). *See, e.g., United States v. Freisinger,* 937 F.2d 383, 386–87 (8th Cir.1991), and *United States v. Drews,* 877 F.2d 10, 12 (8th Cir.1989); *see also United States v. Necoechea,* 986 F.2d 1273, 1278–79 (9th Cir.1993), and *United States v. Kerr,* 981 F.2d 1050, 1053–54 (9th Cir.1992).

In its opening statement, the government described the terms of Mr. Harlin's plea agreement as being that "if he cooperates fully and testifies truthfully, the government will advise the Court of the extent of his cooperation, which the Court may consider at the time of sentencing." During Mr. Harlin's testimony, the government asked him to read the paragraph from his plea agreement

that required him to "provid[e] complete and truthful statements" to federal agents and "complete and truthful testimony" to grand juries and during court "hearings, trials, and other proceedings." The government then asked, "What occurs in the event that you give false or incomplete or misleading testimony?" Mr. Harlin answered, "I would be in violation of the agreement. The agreement wouldn't be any good, I guess." Later in Mr. Harlin's examination, the government asked, "Do you understand, in accordance with the plea agreement, that if the government catches you lying, the plea agreement is off?" Mr. Harlin replied, "Yes."

During Mr. Clark's examination, the government asked, "[D]o you understand that your agreement with the government requires you to tell the truth here today?" Mr. Clark responded, "Yes, I do." The government continued, "And if you are found to be telling a lie to this jury, what do you expect is going to happen to your plea agreement?" Mr. Clark answered, "It probably will be revoked."

We have read and reread those parts of the trial transcript where the government mentioned or asked about the plea agreements. We see nothing in those parts of the transcript that would lead a jury to believe that "the government may know something that the jury does not" about the veracity of either witness, *United States v. Freisinger,* 937 F.2d at 386–87, or that the government "had independently verified the witnesses' testimony," *United States v. Drews,* 877 F.2d at 12. None of the references to the plea agreements or the questions regarding them "impl[ied] a guaranty of [either witness's] truthfulness, refer[red] to extra-record facts, or reflect[ed] a personal opinion." *United States v. Necoechea,* 986 F.2d at 1278–79. Nor did the government suggest that the trial court, "in accepting the plea agreements of the witnesses, had been satisfied as to the truthfulness of their proposed testimony." *United States v. Kerr,* 981 F.2d at 1053. Under those circumstances, we reject Mr. McCrary's argument with respect to improper vouching by the government.

During the jury instructions conference, Mr. McCrary offered three instructions that were rejected by the trial court. Those proposed instructions apparently would have required the jury to determine, beyond a reasonable doubt, the period during which each defendant participated in the drug conspiracy and the amounts of drugs properly attributable and foreseeable to each defendant (unfortunately, we do not find a copy of those instructions in the materials submitted to us). The gist of Mr. McCrary's argument is that since the period of participation in the conspiracy and, therefore, the amounts of drugs attributable and foreseeable to a defendant substantially affect the sentencing guidelines range to which a defendant is subject, those factual matters should have been determined by the jury as part of the conviction process. Without such jury determinations beyond a reasonable doubt, Mr. McCrary argues, he was deprived of his fifth amendment right to due process and his sixth amendment right to a jury trial. *See, e.g., United States v. Rigsby,* 943 F.2d 631, 639–43 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1269, 117 L.Ed.2d 496 (1992), and *United States v. McNeese,* 901 F.2d 585, 605–06 (7th Cir. 1990); *see also United States v. Wise,* 976 F.2d 393, 401 (8th Cir.1992) *(en banc), cert. denied,* — U.S. —, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993).

This circuit has repeatedly rejected those arguments. *See, e.g., United States v. Calva,* 979 F.2d 119, 121–22 (8th Cir.1992); *United States v. Galloway,* 976 F.2d 414, 422–26 (8th Cir.1992) *(en banc), cert. denied,* — U.S. —, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993); *United States v. Simmons,* 964 F.2d 763, 771–72 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992); and *United States v. Olderbak,* 961 F.2d 756, 761 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 422, 121 L.Ed.2d 344 (1992). We therefore decline to consider them here.

Under the federal sentencing guidelines, a trial court may reduce a defendant's base offense level by two levels for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). On appeal, Mr. McCrary challenges the trial court's refusal to grant that reduction. We review a trial court's finding with respect to

acceptance of responsibility for clear error. *See, e.g., United States v. Miller,* 951 F.2d 164, 165 (8th Cir.1991) *(per curiam ).* We have read the transcript of the sentencing hearing. The trial court's finding is not clearly erroneous.

The federal sentencing guidelines establish the base offense level for drug crimes according to the amount attributable to the defendant. *See* U.S.S.G. § 2D1.1(a)(3), § 2D1.1(c). Crimes involving between 1.5 kilograms and 5 kilograms of cocaine base are level 38; crimes involving between 500 grams and 1.5 kilograms of cocaine base are level 36; and crimes involving between 150 grams and 500 grams of cocaine base are level 34. Mr. McCrary asserts that although the trial court used the amount of 325 grams to determine his base offense level, the trial court inexplicably assigned that amount to level 38 rather than to level 34.

In the presentence report on Mr. McCrary, the probation officer suggested that a total of 2,707 grams of cocaine base had been established as having been distributed during the drug conspiracy. By letter and again at the sentencing hearing, Mr. McCrary objected to the inclusion within that amount of 2,471 grams (from a package sent to a location other than the ones primarily implicated at trial). At the sentencing hearing, the trial court accepted that objection and stated that the challenged amount would not be considered for sentencing purposes. Deducting that amount from the total proposed in the presentence report leaves the amount of 236 grams. (Mr. McCrary did not challenge the remaining amounts of cocaine base used for the calculation, which evidently were derived from the amounts purchased in transactions by an informant or by undercover police officers at the locations primarily implicated at trial.)

At the sentencing hearing, the trial court heard testimony that Mr. McCrary transferred approximately $65,000 by wire to a confederate in California. A police officer, testifying as an expert witness, stated that such an amount would buy from three to five kilos of cocaine base, if purchased in quantities of a kilo at a time, or approximately 325 grams of cocaine base, if purchased in quan-

tities of one-tenth of an ounce at a time (the amount usually sold in the individual purchases attributed to the drug conspiracy).

In making its findings with respect to the amount of cocaine base to be attributed to Mr. McCrary for sentencing purposes, the trial court first stated that it would disregard the challenged amount from the presentence report. The trial court then referred to the $65,000 about which the police officer had testified at the sentencing hearing and stated, "This alone would represent street sales of about 325 grams, and more likely than not a drug house operation exceeding 500 grams. That is Level 36. Because there is no basis to conclude that the payments were to purchase from [the confederate in California] anything other than crack cocaine, I would conclude that we are dealing with a Level 38 crime involving amounts exceeding 1.5 kilograms as opposed to [the 2.7 kilograms] in ... the Presentence Report."

Mr. McCrary argues that it is unfair to consider both the amount derived from the presentence report and the amount extrapolated from the testimony with respect to the $65,000. He asserts that the transactions covered by the presentence report are essentially the same transactions covered by the wire transfers of the $65,000 and, therefore, that using both to determine the amount of drugs attributable to him constitutes double-counting. *See, e.g., United States v. Mendoza,* 902 F.2d 693, 698–99 (8th Cir.1990).

It is not clear to us from the transcript of the sentencing hearing whether the trial judge was using the presentence report, the testimony with respect to the $65,000, or both, or some other information (perhaps some of the evidence at trial) to arrive at the conclusion that an amount of more than 1.5 kilograms should be attributed to Mr. McCrary for sentencing purposes. We are "thus unable to engage in any meaningful review of the [trial] court's decision." *United States v. Coleman,* 990 F.2d 419, 422 (8th Cir.1993). Under those circumstances, we vacate Mr. McCrary's sentence and remand his case to the trial court for reconsideration. On remand, we direct the trial court to articulate the basis it uses to determine the amount of drugs attributable to Mr.

McCrary. *See, e.g., id.; United States v. Alexander,* 982 F.2d 262, 267–68 (8th Cir. 1992); and *United States v. Candie,* 974 F.2d 61, 65 (8th Cir.1992). *See also United States v. Bluske,* 969 F.2d 609, 616 (8th Cir.1992).

### III.

Mr. Friends was convicted of conspiracy to distribute more than 50 grams of cocaine base; distribution on June 9, 1992, of cocaine base; use of a·firearm on June 9, 1992, in connection with the distribution of cocaine base; and unlawful acquisition on June 9, 1992, of food stamps. On appeal, he argues that the evidence was insufficient on the firearms charge; that the trial court erred in various evidentiary rulings; that the testimony of the informant was based on conduct not authorized by the police; that the police continued to enter various drug transactions with members of the drug conspiracy solely for the purpose of increasing the federal sentencing guidelines range to which Mr. Friends (and other defendants) would be subject; and that the trial court improperly imposed a two-level enhancement, for obstruction of justice, to his base offense level.

We have read with care the trial transcript. The testimony that was most incriminating to Mr. Friends with respect to the firearms charge was given by Leroy Lee, an informant, and by Russell Clark, who had earlier pleaded guilty to two drug offenses and one firearms offense and was testifying under a plea agreement with the government. In our view, the testimony given by those witnesses is sufficient to sustain Mr. Friends's conviction on the firearms charge. *See, e.g., United States v. Jones,* 990 F.2d 1047, 1048 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994).

In a *pro se* brief, Mr. Friends challenges the trial court's rulings allowing the admission of evidence with respect to an uncharged drug transaction and with respect to the in-court identification of him by Leroy Lee, an informant, after Mr. Lee had identified Mr. Friends's voice on a tape recording. We have read the trial transcript and have considered Mr. Friends's arguments on those

points. Nonetheless, we reject them. In his *pro se* brief, Mr. Friends also seems to contend that the testimony of Leroy Lee recounted acts by Mr. Lee not authorized by the police (and, therefore, that the testimony was possibly misleading or inadmissible, according to Mr. Friends). We see no error in the trial court's admission of that testimony.

In his *pro se* brief, Mr. Friends asserts that he was entrapped by the police for sentencing purposes, *i.e.*, that they entered into more drug transactions than necessary for a conviction, just so he (and other defendants) would be subject to a higher federal sentencing guidelines range (the guidelines ranges are based on quantity attributable to the drug conspiracy). This circuit has recognized that "there could be situations in which the government engages in continuing undercover or sting transactions for the sole purpose of ratcheting up a sentence under the guidelines." *United States v. Shephard,* 4 F.3d 647, 649 (8th Cir.1993); *see also United States v. Calva,* 979 F.2d 119, 122–23 (8th Cir.1992), and *United States v. Lenfesty,* 923 F.2d 1293, 1300 (8th Cir.1991), *cert. denied,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991).

Mr. Friends testified with respect to this issue at the sentencing hearing, but the trial court found that, in this case, there was no "abuse of prosecutorial discretion" in the decision about "when [the police] should stop their investigation" of "the drug house." We have read carefully the transcripts of both the trial and the sentencing hearing for Mr. Friends. We see no error in the trial court's conclusion. We therefore reject Mr. Friends's argument with respect to sentencing entrapment.

■ Finally, Mr. Friends asserts that the trial court improperly imposed a two-level increase, for obstruction of justice, on his base offense level. *See* U.S.S.G. § 3C1.1. The trial court imposed that enhancement after testimony by Mr. Friends at the sentencing hearing. In that testimony, Mr. Friends denied all involvement in drug transactions, including the one for which he was convicted.

The trial court made a specific finding that Mr. Friends's testimony was false. We have read the transcript of the sentencing hearing, and that finding is not clearly erroneous. Imposition of the two-level increase under those circumstances is therefore not improper. *See, e.g., United States v. Dunnigan,* —— U.S. ——, ———–——, 113 S.Ct. 1111, 1117–19, 122 L.Ed.2d 445 (1993). *See also United States v. Willis,* 997 F.2d 407, 417 (8th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994); *United States v. Claymore,* 978 F.2d 421, 423–24 (8th Cir. 1992); *United States v. Flores,* 959 F.2d 83, 87 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992); *United States v. Willis,* 940 F.2d 1136, 1140 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993); and U.S.S.G. § 3C1.1, application note 1, application note 3(b).

## IV.

Mr. Brown pleaded guilty to conspiracy to distribute more than 50 grams of cocaine base; distribution on June 2, 1992, of five grams or more of cocaine base; and use of a firearm on June 2, 1992, in connection with the distribution of cocaine base. On appeal, he argues that the trial court erred in refusing to grant him a two-level reduction, for "minor" role, in the base offense level used for sentencing purposes; that the trial court erred in imposing a $500 fine upon him; and that either the mandatory minimum sentences imposed by statute or the guidelines themselves are unconstitutional.

Under the federal sentencing guidelines, the trial court may reduce the defendant's base offense level by two levels if the trial court finds that the defendant played a "minor" role in the drug conspiracy charged. *See* U.S.S.G. § 3B1.2(b). We have read thoroughly the transcript of Mr. Brown's sentencing hearing. The trial court's finding that Mr. Brown's role in the drug conspiracy was not a minor one is not clearly erroneous. *See, e.g., United States v. Rayner,* 2 F.3d 286, 288 (8th Cir.1993); *United States v. Harris,* 974 F.2d 84, 86 (8th Cir.1992); *United States v. Laird,* 948 F.2d 444, 447 (8th Cir.1991); and *United States v. Foote,* 898

F.2d 659, 668 (8th Cir.1990), *cert. denied,* 498 U.S. 838, 938, 112 L.Ed.2d 307 (1990).

The trial court imposed a $500 fine on Mr. Brown. On appeal, he contends that the trial court's determination that he could pay such a fine was clearly erroneous, in light of the fact that his net worth at the time of sentencing was only $1,025, according to the presentence report. *See, e.g., United States v. Granados,* 962 F.2d 767, 774 (8th Cir. 1992); *United States v. Cammisano,* 917 F.2d 1057, 1064 (8th Cir.1990); and *United States v. Walker,* 900 F.2d 1201, 1206–07 (8th Cir.1990) (*per curiam* ).

Under the federal sentencing guidelines, the trial court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." *See* U.S.S.G. § 5E1.2(a). In deciding how much the fine should be, the trial court "shall consider . . . the need for the combined sentence to reflect the seriousness of the offense[,] . . . to promote respect for the law, to provide just punishment and to afford adequate deterrence; . . . any evidence presented as to the defendant's ability to pay the fine . . . in light of his earning capacity and financial resources; . . . the burden that the fine places on the defendant and his dependents relative to alternative punishments; . . . and . . . any other pertinent equitable considerations." *See* U.S.S.G. § 5E1.2(d).

The language of the guidelines is mandatory with respect to the factors that the trial court must consider before imposing a fine, and this circuit has held that a trial court must make "specific findings as to each of those factors" if a fine is to be imposed. *United States v. Granados,* 962 F.2d at 774; *see also United States v. Cammisano,* 917 F.2d at 1064, and *United States v. Walker,* 900 F.2d at 1206. During the sentencing hearing, the trial court first imposed a fine of $3,000, stating, "There are means of earning money under the prison system during incarceration." After counsel for Mr. Brown protested, citing the effect that Mr. Brown's incarceration would have on his "wife and two small children" and his net worth of only $1,025, the trial court responded, "I think this is a good point, and I will reduce it to a $500 fine."

We note that Mr. Brown's fine was less than the fines imposed on his co-defendants. It is also clear, from the transcript of the sentencing hearing, that the trial court considered the factors specified in the guidelines, although the findings reflected in that transcript could have been more explicit. Nonetheless, under the circumstances of this case, we cannot say that the trial court's determination that Mr. Brown could pay a $500 fine was clearly erroneous. *See, e.g., United States v. Johnston,* 973 F.2d 611, 615 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1019, 122 L.Ed.2d 165 (1993).

Finally, Mr. Brown appears to argue that either the statutory minimum sentences or the guidelines themselves for his offenses constitute a deprivation of due process. (At trial and in the introductory parts of his brief, Mr. Brown protested the statutory minimum sentences; the text of his brief, however, deals with the guidelines.) Presumably, he refers only to the drug offenses and not to the firearms charge (his brief does not specify the pertinent offenses), since the firearms charge requires a fixed sentence of five years, to be served consecutively to any other sentence imposed. *See* 18 U.S.C. § 924(c)(1).

Conspiracy to distribute more than 50 grams of cocaine base carries a minimum sentence of 10 years. *See* 21 U.S.C. § 841(a)(1), § 841(b)(1)(A)(iii), § 846. Distribution of more than five grams of cocaine base carries a minimum sentence of five years. *See* 21 U.S.C. § 841(a)(1), § 841(b)(1)(B)(iii). The specification of mandatory minimum sentences in the statute has withstood multiple constitutional challenges. *See, e.g., United States v. Mendoza,* 876 F.2d 639, 641 (8th Cir.1989), and the cases cited therein. To the extent that Mr. Brown is challenging the constitutionality of mandatory minimum sentences, then, we reject that argument.

The federal sentencing guidelines have also withstood various constitutional challenges, including the one offered by Mr. Brown. *See, e.g., United States v. Wayne,* 903 F.2d 1188, 1198 (8th Cir.1990); *United*

*States v. Nunley,* 873 F.2d 182, 186 (8th Cir.1989); and *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.1989), *cert. denied,* 493 U.S. 865, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989). We therefore decline to revisit that issue.

### V.

For the reasons stated, we affirm the convictions of Mr. Magee, Mr. McCrary, and Mr. Friends. We affirm the sentences of Mr. Magee, Mr. Friends, and Mr. Brown. We vacate Mr. McCrary's sentence and remand his case to the trial court for reconsideration with respect to the amount of drugs attributable to Mr. McCrary.

WELLFORD, Senior Circuit Judge, concurring.

I concur in the court's opinion. I express concern only in one area: the practice of the prosecution in "vouching" for a prosecution witness in opening statement by making reference to a plea agreement's provision about testifying "truthfully" and thereby cooperating "fully" with the government. I would disapprove of this practice. I believe that *United States v. Drews,* 877 F.2d 10, 12 (8th Cir.1989), sets forth the approved (but limited) practice in this regard:

> In this circuit, a confederate's guilty plea or plea agreement is admissible on the government's direct examination of the witness as evidence of the witness' credibility or of his acknowledgement of participation in the offense. *United States v. Braidlow,* 806 F.2d 781, 783 (8th Cir.1986); *United States v. Hutchings,* 751 F.2d 230, 237 (8th Cir.1984), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 75 (1985).

It should be noted that the plea agreement's terms about truthful testimony are admissible on the witness' testimony, not on opening statement of counsel, because it may support or impeach the witness' credibility. *See United States v. Townsend,* 796 F.2d 158, 163 (6th Cir.1986). In *Drews,* furthermore, the district court gave cautionary instructions about taking into account whether "the

witnesses's testimony may have been influenced by a desire to please the government." *Id.* at 12. I believe this is the proper practice in such a situation,[1] although it may not be necessary also to instruct the jury to consider this testimony with "greater care and caution." *Id.*

Although I am disposed to consider the action here to have been error, I am satisfied that it was harmless error under all the circumstances. McCrary did not request a cautionary instruction nor, apparently, object during the prosecution's opening statements.

---

1. The government should not "suggest or imply that it had independently verified the witnesses'

testimony." *United States v. Drews,* 877 F.2d 10, 12 (8th Cir.1989).