**UNITED STATES of America**

v.

**Michael Floyd BARTH.**

**Crim. No. 4-91-103.**

United States District Court,
D. Minnesota,
Fourth Division.

April 9, 1992.

Jeffrey Paulson, Asst. U.S. Atty., Minneapolis, Minn., for U.S.

Michael McGlennen, Minneapolis, Minn., for Michael Floyd Barth.

## SENTENCING MEMORANDUM and STATEMENT OF REASONS

ROSENBAUM, District Judge.

### I. *Findings of Fact*

The probation office prepared a presentence investigation report (PSI) in this manner. The government has no objections to the report. Paragraph 29 of the report states that the aggregate amount of drugs used to find the appropriate offense level is 50.4 grams of cocaine base. Defendant contends that the aggregate amount of drugs is 49.8 grams.

At trial, the Court heard conflicting evidence regarding the amount of cocaine base involved in Count 7. The arresting officer testified that Count 7 involved 20.9 grams, making the aggregate amount 49.8 grams. The Minneapolis city chemist testified that Count 7 involved 21.5 grams, making the aggregate amount 50.4 grams. The Court notes that this relatively insignificant difference in weight translates to an enormously significant difference in the mandatory minimum sentence dictated by statute. Under 21 U.S.C. § 841(a)(1), the mandatory minimum sentence for distributing 50 or more grams of cocaine base is ten years, whereas the mandatory minimum sentence for 5 to 50 grams is five years. The Court finds that the inexact evidence of .6 additional grams of cocaine base is a slender reed on which to hang five years of a person's life. This is especially true when the triggering factor is the "100 multiplier" used in cocaine base cases. Accordingly, the Court finds that the aggregate amount of drugs for calculation of the appropriate offense level is 49.8 grams.

As such, the penalty provisions of 21 U.S.C. § 841(b)(1)(B), calling for a five year mandatory minimum sentence, are applicable.

### II. *Application of Guidelines to Facts*

The Court determines the applicable guidelines to be:

A) Total Offense Level: 30

B) Criminal History Category: I

C) Guideline Sentence: 97–121 months

D) Supervised Release: 4 years mandatory minimum

E) Fine: $15,000 to $4,000,000, plus costs of imprisonment or supervised release

F) Restitution: Not Applicable

G) Special Assessment: $350

### III. *Defendant's Motion for Departure*

Defendant moves the Court for a downward departure from the presumptive sentence pursuant to 18 U.S.C. § 3553(b). Defendant argues that several mitigating factors warrant departure. First, defendant urges this Court to find that the five-year mandatory minimum sentence applies to this case. The Court has so found. Defendant also argues that the sentencing guidelines have reintroduced racial disparities in the criminal justice system. The Court has observed this unexpected aftermath of guideline sentencing, but does not rely on that observation as a ground for departure in this case.

Finally, defendant argues that departure is appropriate where undercover narcotics agents make a series of buys with the sole purpose of enhancing the penalty to the buyer. The Court will address this argument in its statement of reasons below.

### IV. *Imposition of Sentence*

For the reasons set forth below, the Court finds it proper to depart from the presumptive guidelines table and imposes the following sentence.

Michael Floyd Barth has been charged in Counts 2 through 7 with distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and in Count 8 with possession

with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Based upon the verdict of guilty, it is considered and adjudged that the defendant is guilty of those offenses.

Therefore, as to Counts 2 through 8, it is adjudged that the defendant is committed to the custody of the Bureau of Prisons for imprisonment for a term of 72 months, each term to run concurrently with the others. Defendant shall receive credit for time served.

The Court recommends a Federal Correctional Institution or a jail type facility in the State of Minnesota as the place for service of the sentence.

Further, as to Counts 2 through 8, it is ordered that the defendant serve a supervised release term of four years, each term to run concurrently with the others. During supervised release the defendant shall:

1) comply with all federal, state, and local laws;

2) comply with all rules and regulations of the probation office;

3) abide by the standard conditions of supervised release as recommended by the sentencing commission;

4) not possess any firearms or other dangerous weapons;

5) submit to periodic drug testing and participate in substance abuse treatment and aftercare as directed by the probation office;

6) participate in psychological/psychiatric counseling or treatment as approved and directed by the probation office.

Further, it is ordered that the defendant pay a special assessment fee of $350, due immediately.

No fine is imposed, as the defendant is without ability to pay.

Restitution is not applicable.

## V. *Surrender*

The Court finds that the defendant is not a candidate for voluntary surrender.

## VI. *Appeal*

The defendant has a right to appeal from his conviction and this sentence within ten days. Failure to appeal within the ten-day period shall be a waiver of right to appeal. The government may file an appeal from this sentence. The defendant is also entitled to assistance of counsel in taking an appeal, and if the defendant is unable to afford a lawyer, one will be provided.

## VII. *Statement of Reasons*

■ The district court may depart from a guideline sentence when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b).

Here, the Court finds that the commission has failed to adequately consider the terrifying capacity for escalation of a defendant's sentence based on the investigating officer's determination of when to make an arrest. The agent in this case was undoubtedly aware that defendant's sentence would be increased two-fold if he continued to transact business until over 50 grams of cocaine base were sold. The Court finds it not at all fortuitous that the agent arrested the defendant only after he had arranged enough successive buys to reach the magic number.

The Eighth Circuit has twice, in dicta, alluded to "sentencing entrapment" as a potential mitigating circumstance which could warrant departure. *United States v. Lenfesty*, 923 F.2d 1293, 1300 (8th Cir. 1991); *United States v. Stuart*, 923 F.2d 607, 614 (8th Cir.1991). The Court declines, however, to resolve the question of whether or not defendant was predisposed to engage in each successive transaction. Defendant asserted an entrapment defense at trial and the jury acquitted him of Count 1. The Court is confident that the jury's findings as to Counts 2 through 8 were fully supported by the evidence.

The question for the Court, instead, is whether or not the circumstances under which these transactions occurred constitute a mitigating factor for sentencing purposes. The Court finds that they do.

Under 28 U.S.C. § 994(c), the commission may consider a number of factors to deter-

mine the category of an offense, including the grade of the offense, the circumstances under which the offense was committed, and the nature and degree of harm caused by the offense. 28 U.S.C. § 994(c).

For drug offenses, one factor dominates the determination of a defendant's guideline sentence—"the grade of the offense" as evidenced by the quantity of drugs involved in the offense. *See* U.S.S.G. Part D. The Court finds that the commission did not adequately consider other relevant factors in drug offenses. The circumstances under which the offense was committed should be considered, especially where undercover agents persevere in their transactions until a suspect provides the aggregate amount of drugs to trigger a mandatory minimum sentence or where the undercover agent's investigation shifts from the identified-seller to the undiscovered "source." Both of these circumstances occurred in this offense and, as such, the Court finds that departure is appropriate.

The Court is well aware that undercover investigations require the orchestration of locations, timing, and methods of investigation. The Court finds, however, that undercover investigations cannot be permitted to orchestrate a defendant's sentence. Here, after the fourth buy, the agent related, in sworn testimony, that his main purpose was to "get to the source." As such, the Court finds that buys five through eight were for an investigatory purpose unrelated to the apprehension of this defendant. While the investigatory purpose was unquestionably a legitimate one, the statutory purposes of guideline sentencing do not permit this Court to penalize a defendant because an agent delayed the arrest to reach a higher-level suspect. *See United States v. Floyd,* 738 F.Supp. 1256, 1260–61 (D.Minn.1990). The statutory objectives for sentencing require courts to "impose a sentence sufficient, but not greater than necessary" to promote respect for the law, deter criminal conduct, protect the public, and provide defendants with needed training or treatment. 18 U.S.C. § 3553(a).

The Court certainly acknowledges that the guidelines have shifted sentencing au-

thority from the courts to the office of the United States Attorney. But this Court will not willingly permit a further shift to the criminal investigator in the field. The Court observes, further, that restricting the legal effect of discretionary decisions by law enforcement personnel is not a foreign concept in American jurisprudence. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

The commission itself recognized the need to restrict the effect of prosecutorial decisions and crafted multiple count rules "in order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct." U.S.S.G. Ch. 3, Pt. D, intro. comment. Thus, the commission assured that a defendant charged with multiple counts in a single course of criminal conduct would not be disproportionately penalized. In this case, the guidelines require that all seven counts be grouped together. U.S.S.G. § 3D1.2(d). But, because guideline sentences for drug offenses are determined largely by aggregate drug quantity, the guidelines do not "prevent multiple punishment" for multiple counts of substantially identical drug offenses.

The Court recognizes that larger sentences for larger drug quantities have a rational purpose. Yet, the Court is directed by Congress and by the Sentencing Commission to craft a sentence which fairly reflects a defendant's culpability. 18 U.S.C. § 3553(a); U.S.S.G. Ch. 1, Pt. A. Where, as here, a defendant is solicited to engage in multiple drug transactions in a single course of criminal conduct, the guidelines may artificially inflate his culpability. The Court finds that a sentence of 72 months is ample to reflect the seriousness of defendant's criminal conduct and to meet the statutory purposes of sentencing.