UNITED STATES of America, Appellant/Cross-appellee,

v.

Michael Floyd BARTH, Appellee/Cross-appellant.

Nos. 92–2152, 92–2180.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1992.

Decided April 6, 1993.

Rehearing and Rehearing En Banc Denied May 25, 1993.

Jeffrey S. Paulsen, Minneapolis, MN, argued, for appellant/cross-appellee.

Michael McGlennen, Minneapolis, MN, argued, for appellee/cross-appellant.

Before McMILLIAN, Circuit Judge, FRIEDMAN,[*] Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

The United States appeals from the district court's downward departure from the applicable sentencing guidelines range in sentencing Michael Floyd Barth. 18 U.S.C. § 3742(b). Barth was found guilty by a jury of six counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Barth was sentenced to 72 months imprisonment, four years of supervised release, and a special assessment of $350.00. Barth cross-appeals and argues the district court abused its discretion in denying his motion for a new trial on the basis of newly discovered evidence. For reasons discussed below, we affirm Barth's conviction, but we vacate his sentence and remand for resentencing.

## I.

Beginning in April 1991, Barth sold crack cocaine to undercover officer John Cich. The first sale was set up by a paid government informant named Charles "Chuckie" Smith; Smith introduced Barth to the undercover officer. Over a five-week period, Barth made seven sales of crack cocaine to the undercover officer. Barth was arrested after the seventh sale. Law enforcement officers searched his residence following his arrest and found 2.4 grams of crack cocaine and drug paraphernalia. Barth was charged with seven counts of distribution and one count of possession with intent to distribute crack cocaine.

Barth's defense at trial was entrapment. He testified he had been introduced to crack cocaine by his friend Chuckie Smith, the government informant. Barth testified that he became a crack cocaine addict and sold crack for Smith in exchange for his own crack cocaine supplies. The government presented evidence that Barth was predisposed to distribute drugs—he used appropriate language and precautionary gestures and he was not hesitant to sell drugs. The government also disputed Barth's claim of addiction, because he did not appear under the influence of drugs during the deals and no user paraphernalia was found in his residence. Barth was acquitted of the first distribution count, but convicted of the other counts.

In the presentence investigation report, the probation officer excluded the drugs involved in the first distribution count and calculated a total drug quantity of 50.4 grams on which Barth's sentence would be based. The sentencing guideline range for 50.4 grams based on Barth's total offense level of 30 and a criminal history category of I is 121 to 151 months, including a 10-year mandatory minimum penalty because the offense involved more than 50 grams of crack cocaine. 21 U.S.C. § 841(a)(1). At sentencing, the district court reduced the quantity to 49.8 grams because of a dispute over the quantity of crack cocaine involved in count 7. The government does not appeal the reduction of the total drug quantity to less than 50 grams. The guideline sentencing range for 49.8 grams of crack is 97 to 121 months based on a total offense level of 30 and a criminal history category

* The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

of I, including a five-year mandatory minimum sentence for amounts from five to less than 50 grams. 21 U.S.C. § 841(b)(1)(B).

The district court departed downward pursuant to 18 U.S.C. § 3553(b), which allows the sentencing court to take into account a circumstance not adequately taken into consideration by the sentencing commission. The district court found "sentencing entrapment" and ruled that none of the drugs following the fourth undercover buy would count toward Barth's sentence because, after that transaction, the investigatory objective was no longer focused on Barth but on his source. The district court found the sentencing commission failed to consider "the terrifying capacity for escalation of a defendant's sentence based on the investigating officer's determination of when to make an arrest." *United States v. Barth*, 788 F.Supp. 1055, 1057 (D.Minn. 1992). The district court stated it was "not at all fortuitous that the agent arrested [Barth] only after he had arranged enough successive buys to reach the magic number (referring to 50 grams, the quantity that triggers the application of the 10–year mandatory minimum sentence)." *Id.* In reaching its decision, the district court found the issue before it to be "whether or not the circumstances under which these transactions occurred constitute a mitigating factor for sentencing purposes," and found that they did. *Id.* While noting that undercover investigations require "the orchestration of locations, timing, and methods of investigation," the district court stated "[investigators] cannot be permitted to orchestrate a defendant's sentence." *Id.* at 1058. The district court sentenced Barth to 72 months imprisonment, four years of supervised release, and a special assessment of $350.00.

## II.

The government argues the district court had no authority to depart downward by arbitrarily disregarding the quantity of drugs involved in counts five through eight of which Barth was convicted. The government asserts there is no legal basis for the concept of sentencing entrapment, but argues that, even if there were, in the present case there was no outrageous conduct by the government.

Sentencing entrapment has been described by this court as " 'outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities' for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant." *United States v. Rogers*, 982 F.2d 1241, 1245 (8th Cir.1993), *quoting United States v. Lenfesty*, 923 F.2d 1293, 1300 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). Although courts have not generally adopted the concept of sentencing entrapment, the sentencing guidelines are causing courts nationwide to rethink the long-established rule of entrapment. *See, e.g., United States v. Williams*, 954 F.2d 668, 673 (11th Cir.1992) (rejecting the theory of sentence entrapment); *United States v. Connell*, 960 F.2d 191, 196 (1st Cir.1992) (refusing to apply sentencing entrapment). This court has declined "to say there is no such animal as 'sentencing entrapment,' " *Lenfesty*, 923 F.2d at 1300, yet has so far failed to apply sentencing entrapment. In *United States v. Stuart*, 923 F.2d 607, 613–14 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991), this court explained that adopting a sentencing entrapment theory would require us to "abandon [our] long-established rule of entrapment which focuses on the predisposition of the defendant to commit crime."

This court has held that, in determining whether a departure is maintainable, we must consider several issues, including whether the circumstance relied upon in departing may be legally relied upon; whether, as a matter of fact, the circumstance is present in the record; and finally whether the magnitude of the departure is reasonable. *United States v. Tucker*, 986 F.2d 278, 279 (8th Cir.1993), *citing United States v. Lang*, 898 F.2d 1378, 1379–80 (8th Cir.1990). Under our standard of review, we hold that sentencing entrapment may be legally relied upon

to depart under the sentencing guidelines, but factually was not present in this case, making the district court's departure unreasonable. While we are concerned with the government conduct in this case, Barth has failed to demonstrate that the government's conduct was outrageous or that the undercover officer's conduct overcame his predisposition to sell small quantities of crack cocaine. Barth argues he was introduced to crack by the government informant and was not predisposed to dealing crack cocaine. However, Barth's predisposition was exhibited by his skillful methods of effecting drug deals—he used the appropriate language, he "palmed"[1] the crack to the undercover officer during the first transaction, he owned a pager—a tool of the drug trade, and he was sophisticated enough to use a "runner"[2] on one occasion.

Assuming for purposes of analysis that sentencing entrapment is a valid basis for downward departure under the sentencing guidelines, we do not agree with the district court that the undercover officer continued to purchase drugs merely to enhance Barth's potential sentence. As noted in *United States v. Calva*, 979 F.2d 119, 123 (8th Cir.1992), the sentencing guidelines' "mechanism of boosting sentences based on the cumulation of additional drug sales has the potential for abuse by police;" however, the present case is not such a case. The undercover officer arranged buys from Barth according to standard undercover procedure. The government's evidence showed that an established drug dealer will not readily sell large quantities of drugs to a new customer and that repeated buys are necessary to gain the dealer's confidence. Moreover, the fact that

the undercover officer was a sheriff's deputy in a state where the threshold for invoking the most serious penalty is ten grams of crack strongly suggests that triggering the 50–gram threshold was not a motivating factor in continuing the investigation. Based on these considerations, we agree with the advice given in *United States v. Connell* that "courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties." 960 F.2d at 196.[3]

We do not attempt to determine in the abstract what is permissible and impermissible conduct on the part of government agents. We share the confidence of the First Circuit that when a sufficiently egregious case arises, the sentencing court may deal with the situation by excluding the tainted transaction or departing from the sentencing guidelines. *Id.* While recognizing that sentencing entrapment may occur, we hold the record in the present case does not support the existence of sentencing entrapment and vacate the sentence and remand for resentencing.

### III.

■ Barth cross-appeals and argues the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence. We hold the district court did not abuse its discretion in denying Barth's motion for a new trial. Following the trial, Chuckie Smith, the government informant, signed a statement that he had involved Barth in drugs. This affidavit tended to corroborate Barth's entrapment defense theory; however, the

---

1. "Palming" is a method of transferring drugs during a handshake. It requires experience to be able to smoothly "palm" drugs without being noticed.

2. A "runner" is one who serves to distract police by fleeing on foot if the dealer's car is stopped.

3. While the government acknowledges the potential for improperly inflating sentences by delaying arrests, it argues that two checks in undercover operations provide adequate safeguards. First, an undercover officer who buys drugs from a dealer is aware the dealer has

other customers he or she is supplying. Because the ultimate law enforcement goal is to get drug dealers off the streets, law enforcement agents have a strong incentive not to delay an arrest. Second, law enforcement agencies have limited resources and it is unlikely that an officer would make excessive purchases because the officer must account for every dollar expended to apprehend drug dealers. The government warns that adopting a sentencing enhancement theory would seriously hamper law enforcement efforts by unduly rewarding those drug dealers who are savvy enough to "go slow" with new customers.

government produced a counter-affidavit in which Smith recanted his first statement, claiming the first affidavit had been the product of harassment by Barth who at that time was not in custody.

### IV.

Accordingly, Barth's conviction is affirmed but his sentence is vacated and the case remanded to the district court for re-sentencing.