16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Allen A. MURPHY, Defendant-Appellant.
 No. 93-5616.
 United States Court of Appeals, Sixth Circuit.
 Jan. 21, 1994.
 
 Before: KEITH, JONES, Circuit Judges and RUBIN, District Judge.[1]
 PER CURIAM:
 
 
 1
 Defendant Allen A. Murphy ("Murphy") appeals his jury conviction and sentence for three counts of unlawful possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a). For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 Sam Hambrick ("Hambrick"), an informant who had been arrested and charged with narcotics offenses, identified Murphy as a drug source. Based on this information, Officer Ed Rigsby ("Rigsby") instructed Hambrick to arrange some "buys" with Murphy. On January 19, 1990, Hambrick told Rigsby the "buys" were easily arranged because he owed Murphy money from a previous cocaine transaction.
 
 
 3
 On January 20, 1990, Rigsby monitored and consensually recorded a telephone conversation between Murphy and Hambrick. Murphy and Hambrick agreed to meet at Murphy's residence, 4238 Eatons Creek Road, Nashville, Tennessee ("Eatons Creek residence") and Murphy agreed to sell Hambrick one-quarter kilogram of cocaine for $6,500.
 
 
 4
 Before the meeting, Rigsby and Hambrick met at a predetermined location. Rigsby searched Hambrick's person and vehicle for contraband to ensure a "controlled buy" and gave Hambrick $6,500 in cash as well as $500 owed from Hambrick's and Murphy's previous transaction. Rigsby surveilled Hambrick and Officer Lewis Lawrence ("Lawrence") surveilled Murphy. Lawrence observed Murphy first travel to 2992 Sunnyview Drive, Nashville, Tennessee ("Sunnyview residence") and then to his Eatons Creek residence arriving at 9:49 p.m. Hambrick arrived at the Eatons Creek residence approximately 10-15 minutes before Murphy. Murphy's wife answered the door and allowed Hambrick to wait for Murphy. After a short conversation, Murphy handed Hambrick a brown paper bag in exchange for money.
 
 
 5
 Later, Hambrick met Rigsby and gave him the bag which contained approximately one-quarter (207.6 grams) kilogram of cocaine. For control purposes, Rigsby searched Hambrick for contraband after the transaction.
 
 
 6
 At Rigsby's direction, Hambrick scheduled a second buy from Murphy for January 26, 1990. Murphy agreed to sell Hambrick another one-quarter kilogram of cocaine for $7,000. On the day of the transaction, Lawrence observed and followed Murphy until the transaction occurred. Lawrence observed Murphy at his Sunnyview address at approximately 4:45 p.m. and again at 7:31 p.m. At that time Murphy left the Sunnyview residence and arrived at his Eatons Creek residence at approximately 8:11 p.m.
 
 
 7
 During the second buy, Hambrick and Murphy repeatedly referred to the first buy. Hambrick stated the first cocaine delivery had been short, instead of receiving 250 grams (approximately one-quarter kilogram) of cocaine, he received only 212 grams. Murphy agreed to supply the additional 38 grams of cocaine and gave Hambrick a Burger King sack filled with cocaine in exchange for the money.
 
 
 8
 After the second controlled buy, Hambrick again met Rigsby at a predetermined location and gave Rigsby the Burger King sack which contained 283.5 grams of cocaine. Conducting the same controlled buy procedures, Rigsby searched Hambrick before and after the transaction.
 
 
 9
 Based on evidence which included the two controlled buys and tape recordings, a magistrate issued a warrant to search the Sunnyview residence. Officer David Grisham ("Grisham"), part of the surveillance team, executed the search warrant at the Sunnyview residence and seized a virtual cocaine distribution laboratory which included:
 
 
 10
 (1) four scales which could be used to weigh substances in ounces or grams;
 
 
 11
 (2) a plastic garbage bag containing 36 kilo wrappers,[2] one of which contained a handwritten note warning that the cocaine had not been 'cut'[3];
 
 
 12
 (3) twelve empty bottles of Inositol and a box of baking soda (cutting agents);
 
 
 13
 (4) an electric sifter, silver/aluminum tray, and grinder;
 
 
 14
 (5) seven additional kilo wrappers, three empty bottles of Inositol, and several plastic bags typically used for packaging and repackaging cocaine; and
 
 
 15
 (6) five kilos of cocaine (5506.9 grams) hidden in a concealed safe.
 
 
 16
 Additionally, Grisham recovered numerous documents which indicated Murphy's ownership or dominion over the Sunnyview residence.[4] When Murphy was arrested, officers recovered a key to the Sunnyview residence on Murphy's person.
 
 
 17
 Rigsby executed a second search warrant at Murphy's Eatons Creek residence seizing: a loaded 12 gauge shotgun, a loaded .38 caliber revolver, gold jewelry, $1,910.00 in a dresser drawer, $2,747.00 in the closet, $135.00 beneath the mattress and $35,182.00 in a hidden safe. Officers seized a total of $46,668.00 from the Eatons Creek residence.
 
 
 18
 On October 15, 1992, a grand jury indicted Murphy and charged him with three counts of unlawful possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). On December 23, 1992, Murphy filed a motion to suppress the evidence seized from the Sunnyview residence. After a hearing on January 4, 1993, the district court denied the motion.
 
 
 19
 On December 8, 1992, the government filed a motion to resolve tape recording-related issues prior to trial. The court ruled the jury should only receive the recorded conversations between Hambrick and Murphy and a transcript of those conversations.
 
 
 20
 On January 27, 1993, trial commenced. Before closing arguments, because the government submitted tapes containing conversations which the court had not ruled admissible, Murphy moved for a mistrial. The court denied the motion. The jury convicted Murphy of all three charges. The court sentenced Murphy to a term of twenty years imprisonment, followed by ten years supervised release. This timely appeal followed.
 
 II.
 
 21
 On appeal, Murphy first argues the district court erroneously denied his motion to suppress evidence. Second, Murphy asserts the district court erred in denying his motion for mistrial. Finally, Murphy contends the district court erroneously refused to recognize his defense of sentencing entrapment during the sentencing hearing. Each allegation of error will be discussed below.
 
 A.
 
 22
 Murphy argues the district court erroneously denied his motion to suppress evidence seized from the Sunnyview residence because it was seized pursuant to a search warrant which lacked probable cause. The district court concluded probable cause existed and denied Murphy's motion to suppress evidence. We agree.
 
 
 23
 The party challenging a search warrant alleging lack of probable cause carries the burden of showing the warrant is invalid. United States v. Longmire, 761 F.2d 411 (7th Cir.1985). A district court's denial of a defendant's motion to suppress evidence in the trial court involves mixed questions of fact and law. Questions of fact are reviewed for clear error, United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980), and questions of law are reviewed de novo. United States v. Newbern, 731 F.2d 744, 747 (11th Cir.1984). Furthermore, a reviewing court must pay great deference to a judicial determination of probable cause because the judicial officer is in the best position to evaluate all the circumstances. United States v. Alfano, 838 F.2d 158, 162 (6th Cir.), cert. denied, 488 U.S. 821 (1988).
 
 
 24
 When reviewing a denial of a motion to suppress, the court must ensure the magistrate had a substantial basis for concluding probable cause existed. A magistrate must make a common sense determination whether there is a fair probability evidence is located in a particular place. Illinois v. Gates, 462 U.S. 213 (1983). The magistrate must find a probability of criminal activity given the totality of the circumstances, however, an absolute certainty that criminal activity or evidence will be found is not necessary. United States v. Alfano, 838 F.2d 158 (6th Cir.1988). This court expressed the test for probable cause as "whether the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that certain items are the fruits, instrumentalities, or evidence of crime and that these items are presently to be found at a certain place." United States v. Acklen, 690 F.2d 70, 72 (6th Cir.1982) (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).
 
 
 25
 In this case, the affidavit sets forth all circumstances surrounding the two controlled buys on January 20 and 26 between Murphy and Hambrick. Prior to each of the two drug purchases, an officer observed Murphy proceed to the Sunnyview residence before going directly to his Eatons Creek residence where the transactions occurred. Officers also recorded conversations between Murphy and Hambrick during the cocaine purchases. Additionally, the affidavit attributed a history of drug trafficking activities, such as money laundering, to Murphy. Based on the evidence presented, a judicial officer could reasonably infer there was a fair probability that evidence and drug contraband were located at the Sunnyview residence. The district court's factual conclusions were not clearly erroneous, nor was the denial of the motion to suppress the evidence seized at the Sunnyview residence erroneous as a matter of law.
 
 B.
 
 26
 Murphy next argues the district court erroneously denied his motion for new trial because the jury was unduly prejudiced by hearing tapes that contained information the court had ordered stricken prior to submission to the jury. The district court denied the motion for a new trial stating the information heard by the jury was not unduly prejudicial. We agree.
 
 
 27
 On December 8, 1992, the government filed a motion to resolve tape-recording related issues. The court ruled the tapes admissible, but instructed the government to erase all material except conversations between Murphy and Hambrick. During trial, however, the government submitted tapes that included a recorded conversation of an officer talking. The material heard by the jury is as follows:[5]
 
 
 28
 ER: Twenty four, one, six. Nine, two, three, twenty four, one, six. We'll be beeping Allen Murphy from telephone number, two, five, one, nine, six, three, seven. Two, five, one, nine, six, three seven. It's now approximately nine sixteen p.m., January twentieth, nineteen ... You have his beeper? Nine, two, three, twenty four, one, six. Two, five, one, nine, six, eight, seven. What's your code?
 
 
 29
 SH: Nine, one, six.
 
 
 30
 ER: Nine, one, six.
 
 
 31
 SH: It's me Ro.
 
 
 32
 AM: Hey.
 
 
 33
 SH: What's going on?
 
 
 34
 Before the jury heard the tapes, the district court instructed the jury the tapes themselves were the actual evidence and the transcripts were merely an aid to determine the tape's contents. The court emphasized if there was any inconsistency between the tapes and the transcript, the tapes controlled. At the close of the evidence, Murphy requested the court grant his motion for mistrial. The district court denied Murphy's motion. A district court's denial of a motion for mistrial will not be disturbed absent showing an abuse of discretion. United States v. Buckley, 934 F.2d 84 (6th Cir.1991); United States v. Chambers, 944 F.2d 1253 (6th Cir.1991).
 
 
 35
 The excerpt of the tape the jury heard contained the recitation of numbers by Rigsby and Hambrick. The information did not pertain to the merits of the trial, and therefore, was not unduly prejudicial. Thus, the denial of the Murphy's motion for a new trial was not an abuse of discretion.
 
 C.
 
 36
 Murphy argues the district court erroneously refused to recognize the defense of sentencing entrapment. He contends the Drug Task Force's delay in arresting him amounted to outrageous conduct in light of officials' express goal to move swiftly to arrest drug participants. The district court refused to recognize the defense of sentencing entrapment in the instant case.
 
 
 37
 The Eighth Circuit described sentencing entrapment as "outrageous official conduct which overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant." United States v. Barth, 990 F.2d 422, 424, (8th Cir.1993) (citing United States v. Rogers, 9782 F.2d 1241, 1245 (8th Cir.1993) (quoting United States v. Lemfesty, 923 F.2d 1293, 1300 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 1602 (1991)). Although this circuit has not addressed this issue directly, in United States v. Fears, this court stated sentencing entrapment could only be present "where there is no predisposition to do the thing that results in a higher sentence." 991 F.2d 796 (Table) 1993 WL 94303 * 3 n. 3, 1993 U.S.App. Lexis 7559, n. 3 (6th Cir.); see also United States v. Twigg, 588 F.2d 373, 376 (3d Cir.1978).
 
 
 38
 The evidence clearly reflects Murphy's predisposition to deal in large quantities of cocaine. Murphy arranged to sell Hambrick one-quarter kilogram of cocaine on two different occasions and volunteered to supply 38 grams of cocaine that were missing from a prior transaction. Additionally, Murphy possessed a key to the Sunnyview residence where officers removed 5 kilograms of cocaine from a concealed safe and 43 kilo wrappers along with various "cutting" agents.
 
 
 39
 The Eighth Circuit stated the sentencing entrapment defense also requires outrageous police conduct. Barth, 990 F.2d at 425. The use of standard operating procedures to arrange buys does not constitute outrageous behavior. Id. "Police must be given leeway to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy." United States v. Calva, 979 F.2d 119, 123 (8th Cir.1992).
 
 
 40
 Here, the record reflects the police did not depart from standard procedure. The controlled buys occurred on January 20 and 26, and on February 2, the police executed a search warrant at the Sunnyview residence. The time period between the last controlled buy and the execution of the search warrant was not unduly long. The district court, therefore, did not err in refusing to apply the sentencing entrapment defense. We decline to address the validity of the defense of sentencing entrapment. We merely hold the facts in this case are insufficient to raise the defense.
 
 III.
 
 41
 For the reasons stated above, we AFFIRM the judgment of the Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee.
 
 
 
 [1]
 The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [2]
 Kilo wrappers are used to ship drugs
 
 
 [3]
 'Cutting' cocaine means the cocaine is mixed with a cutting agent, such as baking soda, to increase the quantity of the drug
 
 
 [4]
 The documents included a receipt, insurance policy, cable bill, prescription bottle in the name of "Allen Murphy" and Murphy's birth certificate and tax record
 
 
 [5]
 "ER" refers to Officer Ed Rigsby; "SH" refers to the informant, Sam Hambrick; and "AM" refers to Defendant Allen Murphy. The actual conversation between Murphy and Hambrick begins with "SH: It's me Ro."