48 F.3d 1220
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES, Plaintiff-Appellee,
v.
Rufus WRIGHT, Sr., Defendant-Appellant.
 No. 93-4228.
 United States Court of Appeals, Sixth Circuit.
 March 9, 1995.
 
 Before: CONTIE, RYAN and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Rufus Wright, Sr., appeals his conviction of distributing cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(c) (Counts 1 and 2); using a firearm during and in relation to drug trafficking crimes, in violation of 18 U.S.C. Sec. 924(c) (Counts 3, 5, 7 and 9); distributing more than five grams of cocaine base, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(B)(iii) (Counts 4 and 6); and possessing a firearm by a convicted felon, in violation of 18 U.S.C. Secs. 922(g)(1) and 924(a) (Count 10). Wright contends that (1) the evidence was insufficient to sustain his conviction; (2) the government's investigation was so outrageous as to violate his due process rights; and (3) the district court improperly imposed consecutive sentences for each of his convictions for violation of 18 U.S.C. Sec. 924(c). For the reasons stated herein, we affirm the decision of the district court.
 
 I. Facts
 
 2
 In February 1993, Patricia Crumm reacquainted herself with Wright.[1] On this occasion, Wright sold Crumm's friend one gram of cocaine. Wright also gave Crumm his telephone number and advised her to call him if she needed anything. Crumm then advised law enforcement officers that Wright was selling cocaine.
 
 
 3
 Thereafter, law enforcement officers proceeded to use Crumm to make five separate purchases of cocaine and cocaine base from Wright. The transactions occurred in 1993, on February 10, February 18, February 26, March 3, and March 4. The purchases, as requested, were for increasingly larger quantities of narcotics as officers were attempting to determine the identity of Wright's supplier. During each transaction, Wright was armed with a handgun. Given the amount of foot traffic and the nature of the apartment complex itself, the officers determined that further attempts to locate and identify Wright's supplier would be fruitless. Thus, the decision was made to locate and seize any contraband within Wright's apartment in addition to seizing his firearms. After the March 4 purchase, officers obtained a search warrant.
 
 
 4
 On March 4, 1993, the search warrant was executed at Wright's residence. Wright was discovered on his knees on the kitchen floor with his back to Officer Carnahan at a 45 degree angle. Wright pulled a pistol out of his shoulder holster as he was partially turned toward the officer. Carnahan advised him to drop his weapon, and, after some hesitation, Wright did so.
 
 
 5
 During the execution of the search warrant, officers found the following: (1) 2 pagers, one of which had been going off several times in rapid succession and all of the numbers were 911 numbers[2]; (2) ten grams of cocaine base; (3) money rolled into a rubber band with white residue on it; (4) a razor blade and plastic scales with powder residue; (5) $216 in U.S. foodstamps coupons which were detached from the original coupon books[3]; (6) Ohaus triple beam scales[4]; (7) three fully loaded handguns; (8) one shotgun; (9) boxes of shotgun and pistol cartridges; and (10) a wallet containing $4,400 in cash and $12 in loose foodstamps.[5]
 
 
 6
 Wright was convicted on all counts. He was sentenced to a term of 97 months on the drug charges and Count 10, with consecutive terms of five years on Count 3 and twenty years each for Counts 5, 7 and 9. The total sentence was 887 months.
 
 II. Sufficiency of Evidence
 
 7
 In the Statement of Issues portion of his brief, Wright contends that the evidence was insufficient to sustain his conviction, but he fails to discuss this contention in the body of his brief. However, a brief discussion will reveal that this contention is without merit, regardless.
 
 
 8
 This court has held that "[o]n appeal, the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). "Issues of witness credibility, moreover, are strictly for the jury to determine." Evans, 883 F.2d at 501 (citations omitted).
 
 
 9
 After a review of the record and the evidence presented at trial, in the light most favorable to the prosecution, we find that it was not unreasonable for the jury to reject Wright's defense and find him guilty of the charges.
 
 III. Sentencing Entrapment
 
 10
 Wright contends that the district court erroneously refused to recognize sentencing entrapment as a defense. He argues that the government's delay in arresting him, coupled with his cocaine addiction and the government's use of an informant with whom he had been romantically involved, amounted to outrageous government conduct in violation of his due process right.
 
 
 11
 This court has not decided whether, under the Guidelines, sentencing entrapment may be a basis for a downward departure. However, other circuits have addressed this issue and advised that sentencing entrapment may warrant a downward departure under certain circumstances. For example, in United States v. Barth, 990 F.2d 422 (8th Cir.1993), the Eighth Circuit reasoned in dicta that, although it was not present in that case, "sentencing entrapment may be legally relied upon to depart under the sentencing guidelines." Id. at 424-25. See also United States v. Connell, 960 F.2d 191, 196 (1st Cir.1992) (leaving open the possibility that sentencing entrapment may be an appropriate basis for reducing a sentence). Further, the Ninth Circuit recently also found that "sentencing entrapment may be legally relied upon to depart under the Sentencing Guidelines." United States v. Staufer, 38 F.3d 1103, 1108 (9th Cir.1994) (quoting Barth, 990 F.2d at 424). Contra United States v. Williams, 954 F.2d 668, 673 (11th Cir.1992). None of the circuits has found sentencing entrapment to be grounds for a dismissal of the charges.
 
 
 12
 Sentencing entrapment has been described as "outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant." Barth, 990 F.2d at 424 (citing United States v. Rogers, 982 F.2d 1241, 1245 (8th Cir.1993) (quoting United States v. Lemfesty, 923 F.2d 1293, 1300 (8th Cir.) cert. denied, --- U.S. ----, 111 S.Ct. 1602 (1991))). While this court has not directly addressed the issue of sentencing entrapment, in United States v. Fears, 991 F.2d 796, 1993 WL 94303 * 3, n. 3 (6th Cir.), we stated, "[W]e believe that if there is such an animal as 'sentencing entrapment,' it can only exist in a habitat where there is no predisposition to do the thing that results in the higher sentence."
 
 
 13
 The evidence presented at trial clearly showed Wright's predisposition to deal in the larger quantities of cocaine: (1) Wright had sold one gram of cocaine to the confidential informant's friend prior to the investigation; (2) the presence of the triple-beam scales; (3) the beepers; (4) the presence of the firearms; (5) his statements to the confidential informant concerning his willingness to do more business; (6) the U.S. foodstamps detached from the original coupon books; and (7) the large amount of cash found in his apartment.
 
 
 14
 Further, this court has held that even if the government's conduct is "outrageous" it does not violate a defendant's constitutional right to due process. United States v. Tucker, 28 F.3d 1429, 1427 (6th Cir.1994). As the facts of this case are insufficient to raise the defense of sentencing entrapment, as adopted by other circuits, we decline to address the issue of whether this circuit should also adopt the defense.
 
 IV. Consecutive Sentences
 
 15
 Wright contends that the district court erred when it imposed consecutive sentences for each of his Sec. 924(c) convictions. This contention is also meritless.
 
 
 16
 "This court, as well as other circuits, has condoned the use of consecutive mandatory minimum terms under Sec. 924(c)(1)." United States v. Johnson, 25 F.3d 1335, 1337 (6th Cir.1994) (en banc). In United States v. Henry, 878 F.2d 937 (6th Cir.1989), this court held that two separate Sec. 924(c) convictions within the same indictment need not be merged for sentencing purposes. Specifically, we stated, "We agree with those courts which have held under such circumstances that each separate offense may be a predicate for a separate section 924(c)(1) firearms charge." Id. at 942.
 
 
 17
 Wright was actually in possession of a firearm during each transaction. Additionally, he had several fully loaded firearms in his residence when the search warrant was executed. Clearly, each offense was a separate and distinct occurrence. Therefore, this contention is also rejected. Deal v. United States, 113 S.Ct. 1993 (1993).
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Crumm was a cooperating witness who had pled guilty to a federal narcotics conspiracy charge in an unrelated case. The evidence presented at trial was that approximately one and one-half years prior to Wright's trial, Crumm had met and carried on a romantic relationship with Wright. Also, there was evidence that, during that time, Crumm had purchased cocaine from Wright approximately 35 to 40 times
 
 
 [2]
 Evidence presented at trial was that drug dealers use pager systems and the numbers "911" to alert such dealers that the police are in the vicinity
 
 
 [3]
 Evidence presented at trial was that foodstamps are often used in drug transactions
 
 
 [4]
 Evidence presented at trial revealed that this type of scales is routinely found in drug dealers' residences
 
 
 [5]
 Of the cash, $980 was part of the pre-recorded official funds utilized in two of the transactions involving Crumm