OPINION
Amos Mounts appeals from a judgment of the Montgomery County Court of Common Pleas, entered pursuant to jury verdicts, which found him guilty of five counts of trafficking in cocaine, four counts of preparation of cocaine, and one count of possession of cocaine and sentenced him to five years and four months of incarceration.
The record reveals as follows. In September 1998, the Moraine Police Department began a five month undercover drug operation targeting Mounts. The investigation was led by Detective Sergeant Tracy Harpster [Tr.p. 511]and involved Diane Taylor, a patrol officer of the Montgomery County Sheriff's Office, posing as a person interested in purchasing cocaine from Mounts for herself and for resale to her friends. During the course of this operation, Taylor purchased cocaine from Mounts on five different occasions. Following her last purchase on January 5, 1999, Mounts was arrested. All of the meetings and phone conversations between Taylor and Mounts were tape recorded by either a body wire or a telephone recording device and numerous tapes of those conversations were admitted at trial.
On January 14, 1999, Mounts was indicted in case number 99-CR-77 as follows: counts 1 and 2 — trafficking in cocaine in an amount of five grams or less in violation of R.C. 2925.03(A), count 4 — trafficking in cocaine in an amount exceeding five grams but not exceeding ten grams in violation of R.C. 2925.03(A), count 6-trafficking in cocaine in an amount exceeding ten grams but not exceeding one hundred grams in violation of R.C. 2925.03(A), and counts 3, 5, and 7 — preparation of cocaine for sale in violation of R.C. 2925.07(A)(4) [sic]. On January 20, 1999, he was indicted in case number 99-CR-97 as follows: count 1 — preparation of cocaine in violation of R.C. 2925.07(A)(4) [sic], count 2 — possession of cocaine in an amount of one gram or less in violation of R.C. 2925.11(A), count 3 — trafficking in cocaine in an amount exceeding ten grams but not exceeding one hundred grams in violation of R.C. 2925.03(A), with a firearm specification, and count 4 — trafficking in cocaine in an amount exceeding one hundred grams but not exceeding five hundred grams in violation of R.C. 2925.03(A). Count 4 of case number 99-CR-97 was later amended to allege possession of cocaine in an amount exceeding one hundred grams but not exceeding five hundred grams in violation of R.C. 2925.11(A). Count 3 of case number 99-CR-97 was later amended to allege trafficking in cocaine in an amount exceeding five grams but not exceeding ten grams in violation of R.C.2925.03(A), with a firearm specification.
Cases 99-CR-77 and 99-CR-97 were consolidated for trial on March 8, 2000. A trial was held on March 13-23, 2000. During the trial, the court granted Mounts' Crim.R. 29 motion on the firearm specification in count 3 of case number 99-CR-97. The court also declared a mistrial on count 4 of case number 99-CR-97 because the jury was hung on that count. The jury found Mounts guilty of the remaining counts.
On April 26, 2000, Mounts was sentenced in case number 99-CR-77 to ten months of incarceration for each of counts 1, 2, 3, 4, 5, and 7 and two years of mandatory incarceration for count 6. The sentences were ordered to be served consecutively with the exception of the sentences for counts 2 and 3 which were to be served concurrently, the sentences for counts 4 and 5 which were to be served concurrently, and the sentences for counts 6 and 7 which were to be served concurrently. In case number 99-CR-97, Mounts was sentenced to ten months of incarceration for each of counts 1, 2, and 3 to be served concurrently with each other and consecutively to the sentences imposed in case number 99-CR-77.
Mounts now appeals his convictions and sentences. On October 2, 2000, Mounts' appointed appellate counsel filed a brief raising two issues but asserting that he had been unable to find any meritorious claims to present for review. Pursuant to Anders v. California (1967), 386 U.S. 738,87 S.Ct. 1396, we granted Mounts sixty days to file a pro se brief assigning errors for review. On December 18, 2000, Mounts filed a pro se brief asserting two assignments of error. The state's brief responded only to Mounts' pro se assignments. We will first address the two issues raised by Mounts' appellate counsel and then address his two pro se assignments of error.
 I. THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN THE CONVICTIONS ENTERED.
Through his appointed counsel, Mounts argues that the evidence was legally insufficient to justify his conviction because the packages of cocaine that were introduced at trial were never identified as the items Mounts had sold to Taylor or as the items Taylor had given to Harpster following her purchases from Mounts.
Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
Chain of custody is a part of the authentication or identification requirement in Evid.R. 901 and the state has the burden of establishing the chain of custody of evidence. State v. Barzacchini (1994),96 Ohio App.3d 440, 457-458, 645 N.E.2d 137, 148. The state's burden is not absolute, however, because it "need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." State v. Blevins (1987), 36 Ohio App.3d 147, 150, 521 N.E.2d 1105,1109. In other words, the state is not required to negate all possibilities of substitution or tampering. State v. Moore (1973),47 Ohio App.2d 181, 183, 353 N.E.2d 866, 870.
In this case, the record reveals that the state presented sufficient testimony to establish a proper chain of custody for the cocaine evidence. Taylor testified that after she had purchased the cocaine packages, she had marked them for evidentiary purposes by writing her initials, date, and time on the packages. She stated that following each sale, she had immediately met with Harpster and had handed the cocaine packages over to him. Harpster testified similarly that following each cocaine sale, he and Taylor had met at the same pre-arranged location, that Taylor had marked the cocaine packages for identification, and that she had handed the cocaine packages over to him. [Tr.80, 557-8] Harpster stated that he had personally taken the cocaine packages to the Miami Valley Regional Crime Laboratory ("crime laboratory") for analysis.
Three forensic scientists who analyzed the cocaine packages received at the crime laboratory from Harpster testified that when they had received the packages, they had been in a sealed condition, had been marked, and had not had any signs of tampering or alteration. They testified specifically about the crime laboratory's procedures regarding evidence as follows. When evidence is brought into the crime laboratory, it is logged into the computer system, given a bar code for identification purposes, and then placed in a locked outer property room. When a chemist is ready to analyze the evidence, it is taken from the locked outer property room to another locked property room that is in the chemistry section of the crime laboratory, wherefrom the chemist gets the evidence to analyze it. After the chemist analyzes the evidence, the chemist returns it to the outer property room where it is kept until it is returned to the providing agency. They also testified that the crime laboratory cannot accept evidence that is in an unsealed condition.
Because this testimony demonstrated with reasonable certainty that substitution, alternation, and tampering did not occur, the state provided sufficient evidence of a chain of custody with respect to the cocaine packages sold by Mounts to Taylor. See State v. Earle (1997),120 Ohio App.3d 457, 471, 698 N.E.2d 440, 449, dismissed (1997),80 Ohio St.3d 1475, 687 N.E.2d 472.
The first assignment of error is overruled.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING CONSECUTIVE, GREATER THAN MINIMUM[,] SENTENCES.
Through his appointed counsel, Mounts also argues that the trial court abused its discretion when it sentenced him to a term of incarceration beyond the minimum term required for the fifth and fourth degree felonies. Specifically, he contends that the court failed to adequately evaluate the applicable statutory sentencing factors and failed to fully consider the role of the police officers in this case who solicited and induced the sales of cocaine.
An appellate court can modify or vacate and remand a sentence if it clearly and convincingly finds that the sentence is contrary to law. R.C. 2953.08(G)(2)(b).
Mounts was convicted of two counts of trafficking non-crack cocaine in an amount of five or less grams in violation of R.C. 2925.03(A). These offenses were fifth degree felonies and a determination of whether to impose a prison sentence for them was to be governed by R.C. 2929.13(C). R.C. 2925.03(C)(4)(a). He was convicted of two counts of trafficking non-crack cocaine in an amount exceeding five grams but not exceeding ten grams in violation of R.C. 2925.03(A). These offenses were fourth degree felonies and involved a presumption of a prison term. R.C.2925.03(C)(4)(c). He was convicted of one count of preparation of non-crack cocaine for sale in an amount not exceeding five grams in violation of R.C. 2925.07(A). That offense was a fifth degree felony and a determination of whether to impose a prison sentence for it was to be governed by R.C. 2929.13(C). R.C. 2925.07(C)(4)(a). He was convicted of two counts of preparation of non-crack cocaine for sale in an amount exceeding five grams in violation of R.C. 2925.07(A). These offenses were fourth degree felonies and involved a presumption of a prison term. R.C.2925.07(C)(4)(c).
For a fifth degree felony, the prison term shall be six, seven, eight, nine, ten, eleven or twelve months. R.C. 2929.14(A)(5). For a fourth degree felony, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. R.C. 2929.14(A)(4). If an offender has not previously served a prison term, a court imposing a prison term for a felony "shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). The record reveals that Mounts had not served a prior prison term.
R.C. 2929.13(C) states that when sentencing for a felony drug offense, the sentencing court shall comply with the purposes and principles of sentencing under R.C. 2929.11 and 2929.12. R.C. 2929.11(A) states, in part, that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.12(A) states that when a mandatory prison term is not required, a sentencing court shall consider the factors listed in that statute regarding the seriousness of the offender's conduct and the likelihood of the offender's recidivism.
Before sentencing Mounts in open court, the trial court stated that it had reviewed the presentence investigation and the evidence provided by the state. The court also stated that it had reviewed the purposes and principles of sentencing listed in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12. After reviewing those materials, the court concluded that the shortest prison term would demean the seriousness of Mounts' conduct and would not adequately protect the public from future crime by Mounts.
Although none of the R.C. 2929.12(B) factors indicated that Mounts' conduct was more serious than conduct normally constituting his offenses and none of the R.C. 2929.12(D) factors indicated that Mounts was likely to commit future crimes, we cannot conclude that his sentences were contrary to the law. The record shows that Mounts engaged in five separate cocaine sales to Taylor and that the amounts sold increased over time. Further, Mounts sold the cocaine to Taylor with the knowledge that she planned to resell it to her friends. Mounts even divided the cocaine into packages for Taylor so that she could easily resell it.
Besides being able to modify a sentence that is contrary to law, an appellate court must remand a sentence if the trial court was required to make findings pursuant to R.C. 2929.13(B) relative to the imposition of a sentence, but failed to state the required findings on the record. R.C.2953.08(G)(1).
Aside from Mounts' convictions for trafficking in cocaine and preparation of cocaine, Mounts was also convicted on one count of possession of non-crack cocaine in an amount not exceeding five grams in violation of R.C. 2925.11(A). That offense was a fifth degree felony and a determination of whether to impose a prison sentence for it was to be governed by R.C. 2929.13(B). R.C. 2925.11(C)(4)(a).
At the time Mounts committed his crimes, R.C. 2929.13(B) stated as follows:
 (1) Except as provided in division (B)(2), (E), (F), or (G) of this section, in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:
 (a) In committing the offense, the offender caused physical harm to a person.
 (b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 (c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 (d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
 (e) The offender committed the offense for hire or as part of an organized criminal activity.
 (f) The offense is a sex offense that is a fourth or fifth degree felony violation of section 2907.03, 2907.04, 2907.05, 2907.22, 2907.31, 2907.321 * * *, 2907.322 * * *, 2907.323 * * *, or 2907.34 of the Revised Code.
(g) The offender previously served a prison term.
 (h) The offender previously was subject to a community control sanction, and the offender committed another offense while under the sanction.
 (2)(a) If the court makes a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), or (h) of this section and if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender.
 (b) Except as provided in division (E), (F), or (G) of this section, if the court does not make a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), or (h) of this section and if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a community control sanction or combination of community control sanctions is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code, the court shall impose a community control sanction or combination of community control sanctions upon the offender.
(Emphasis added.) R.C. 2929.13(E), (F), and (G) were not relevant to Mounts' case.
R.C. 2929.13(B) required that in sentencing Mounts on count 2 of case number 99-CR-97, the trial court was required to determine whether any of the factors in R.C. 2929.13(B)(1)(a) through (h) applied to Mounts' case. See State v. Kawaguchi (2000), 137 Ohio App.3d 597, 605,739 N.E.2d 392, 397. The trial court did not make any findings pursuant to R.C. 2929.13(B) at the sentencing hearing and it did not mention R.C.2929.13(B) in the journal entries containing Mounts' sentences. Because the trial court failed to make any findings pursuant to R.C. 2929.13(B), R.C. 2953.08(G)(1) requires that we remand the case to the trial court. Upon remand, the trial court should follow the procedures set forth in R.C. 2929.13(B) and resentence Mounts on count 2 of case number 99-CR-97 appropriately by stating, on the record, the required findings.
The second assignment of error is persuasive with regard to count 2 of case number 99-CR-97 and is overruled with regard to the remainder of the counts in case numbers 99-CR-77 and 99-CR-97.
 III. APPELLANT WAS INCITED/INDUCED/"ENTRAPPED" BY AN OFFICE[R] OF THE MONTGOMERY COUNT[Y] SHERIFF'S DEPARTMENT INTO COMMITTING A CRIME.
In his pro se brief, Mounts argues that he proved the defense of entrapment at trial.
"The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." State v. Doran (1983),5 Ohio St.3d 187, 449 N.E.2d 1295, paragraph one of the syllabus. "[E]ntrapment is not established when government officials merely afford opportunities or facilities for the commission of the offense and it is shown that the accused was predisposed to commit the offense." Id. at 192, 449 N.E.2d at 1299 (quotation omitted.) The Doran court listed the following factors that it deemed relevant regarding the issue of predisposition: "(1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity." Id. Regarding Mounts' previous involvement in criminal activity of the nature charged, Mounts states that he was never previously arrested or charged with committing a crime. Although Mounts might never have been arrested for prior criminal activity, the record supports the conclusion that he had previous involvement with trafficking and using illegal drugs. Specifically, Mounts told Taylor that he liked to take Somas, a prescription medication, and that he had prescriptions for Somas from two different physicians. He also told Taylor that he "used to deal extensively in 714s," or Quaaludes, during the 1970s. He told Taylor that although he only "does a line" of cocaine "every once in awhile," he had smoked "pot" every day for thirty three years and that he would "never give that up." During one of their meetings, Mounts also revealed to Taylor that before the meeting, he had been searching for someone who owed him money for cocaine and marijuana that Mounts had previously sold to him.
Regarding Mounts' ready acquiescence to the inducements offered by the police, Mounts argues that Taylor had to make numerous contacts with him before he sold her cocaine, that Taylor used "personal inducements" in addition to money to tempt him to sell her cocaine, and that Taylor used Mounts' financial instability to tempt him to sell cocaine to her. The record reveals, however, that during the very first arranged meeting between Taylor and Mounts, Mounts brought up the subject of cocaine by asking Taylor whether she liked it. He also told her, during that meeting, that he planned to purchase between four and five ounces of cocaine when he received his workers' compensation check. Although Mounts' attorney argued at trial that Taylor had tempted Mounts with promises of an eventual intimate relationship, Taylor's testimony rebutted that argument. Further, during one of the taped conversations, Mounts, himself, described his relationship with Taylor as "friends." Further, although Mounts might have had some financial instability, there was no evidence that Taylor used his financial situation to tempt him to sell cocaine. In fact, it was Mounts, himself, who stated that he would be receiving a workers' compensation check and that he planned to use that large amount of money to buy four or five ounces of cocaine.
Regarding Mounts' expert knowledge of drug selling, he argues that he was not engaged in an organized distribution of drugs. The record reveals, however, that he used terms such as eight-ball which are commonly known in the drug trade. Further, Mounts had a familiarity with drug pricing in this area and how drugs are priced generally, i.e., that when drugs are purchased in greater amounts, a lower price is charged.
Regarding Mounts' ready access to the contraband, Mounts argues that he "always put off [Taylor]'s requests for drugs" because he had to go through the process of procuring them for her. The record reveals, however, that for one of his sales of cocaine to Taylor, he told her that although his usual supplier had been unavailable, he had procured the drugs for her through a friend of his who had happened to stop by his house. Thus, although Mounts might not have always had the cocaine in his possession, he apparently had a "usual" supplier.
Regarding Mounts' willingness to involve himself in criminal activity, he argues that he "was subjected to [a] choreographed onslaught of incentives, cajolling[,] [sic] and inducement before" he agreed to sell drugs to Taylor. The record reveals, however, that Mounts first brought up the subject of cocaine to Taylor. Further, Mounts had an extensive amount of drug paraphernalia in his home which was found pursuant to a search warrant, including digital scales, envelopes and plastic baggies, a pipe, a hemostat, rolling papers, a roller, a pill crusher with white residue, a spoon, tweezers with white power, straws with white residue, scissors with white residue, and a marble slab that had marijuana on it. Thus, the record supports the conclusion that Mounts was willingly involved in trafficking and using cocaine.
Because all of this evidence supports the conclusion that Mounts was predisposed to sell cocaine, we cannot conclude that Mounts proved the defense of entrapment at trial. Mounts further argues that the police "engaged in outrageous government conduct to subvert [his] due process and rights" guaranteed by the Fifth and Fourteenth Amendments. In State v. Miller (July 29, 1993), Montgomery App. No. 13121, unreported, we held that "a due process defense outside the defense of entrapment may be made in Ohio." In reviewing the facts in this case, however, we cannot conclude that Mounts was bodily or morally coerced into selling cocaine or that there was an offense to his person as was required in Miller. See id. Further, the evidence does not reveal that Mounts was "pressed into" selling the cocaine to Taylor. See id. Thus, we will not conclude that his due process rights were violated by police conduct.
Mounts also argues that the "jury instruction should have been clarified on the issues involved in entrappment" [sic]. Although his argument is not clear, we have reviewed the jury instructions given and they were proper.
The third assignment of error is overruled.
 IV. THE SHERIFF'S OFFICER ENGAGED IN A COURSE OF CONDUCT DESIGNED TO "ENTRAP" APPELLANT INTO COMMITTING A MORE SERIOUS OFFENSE THAT CARRIES A MORE SEVERE SENTENCE.
In his pro se brief, Mounts argues that he suffered sentencing entrapment.
Sentencing entrapment has been defined as "`outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities' for the purpose of increasing the amount of drugs * * * and the resulting sentence of the entrapped defendant." State v. Lofties (Apr. 24, 1998), Erie App. No. E-96-080, unreported, quoting United States v. Barth (C.A.8, 1993), 990 F.2d 422, 424, (quotation omitted). Ohio has not recognized the concept of sentencing entrapment. Id.
Moreover, even if Ohio did recognize sentencing entrapment, the facts in this case do not support a finding that Taylor and Harpster engaged in outrageous conduct. The record also fails to support any notion that Mounts was only predisposed to deal in small quantities or that his will was overcome by Taylor. Thus, his argument is not persuasive.
The fourth assignment of error is overruled.
Pursuant to our responsibility under Anders, we have reviewed the entire record and have found no other meritorious appellate issues.
The judgment of the trial court will be affirmed in part, reversed in part, and remanded for resentencing on count 2 of case number 99-CR-97.
 _______________ WOLFF, P. J.
FAIN, J. and GRADY, J., concur.